[Civ. No. 67990. Second Dist., Div. Six. Sept. 7, 1983.]

ALPHONSO MEDINA AYALA, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Richard E. Erwin, Public Defender, David P. Ammons, Assistant Public Defender, and H. Bruce Kinnison, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, and Kenneth W. Riley, Deputy District Attorney, for Real Party in Interest.

OPINION

**GILBERT, J.**—Petitioner seeks review of an order of the superior court denying his petition for a certificate of rehabilitation (Pen. Code, § 4852.01, et seq.).[1] Inasmuch as it appears that appeal is an inadequate remedy, this court has issued an alternative writ of mandate. (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 128 [142 Cal.Rptr. 325].) We agree with petitioner that the superior court erred in denying his petition.

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

Petitioner pled guilty to rape and assault charges (§§ 261, subd. (2) and 220) on December 16, 1975. On February 6, 1976, criminal proceedings were suspended and petitioner was committed to Atascadero State Hospital as a mentally disordered sex offender (MDSO). He was released from Atascadero on December 9, 1977, and treated as an outpatient.

Criminal proceedings were resumed on October 26, 1978 (former Welf. & Inst. Code, § 6325.1, subd. (a)). On November 27, 1978, petitioner was placed on three years' probation. His motion to set aside the plea and dismiss charges was granted January 13, 1982. (§ 1203.4.) On July 2, 1982, petitioner moved for a certification of rehabilitation. (§ 4852.01, subd. (c).)[2] A petition for a certificate of rehabilitation is the first step that an ex-felon must take in seeking a pardon from the Governor. The ex-felon must establish that during a prescribed period he has met certain conditions which demonstrate his rehabilitation. (§ 4852.08.) Should the court determine that the ex-felon has established his rehabilitation, it shall issue a certificate of rehabilitation and recommend that the Governor grant a full pardon to petitioner. (§ 4852.13.) A full pardon restores all rights, privileges and franchises to the ex-felon. (§ 4853.)

Petitioner's request for a certificate of rehabilitation was argued on December 16, 1982. The court found that petitioner's release on probation (Nov. 27, 1978)—not his release as a MDSO outpatient (Dec. 9, 1977)— was the controlling date for the purposes of commencing the running of the five-year period set forth in section 4852.03.[3] The court, in denying the

---

[2]Section 4852.01, subdivision (c) reads, in pertinent part: "Any person convicted of a felony the accusatory pleading of which has been dismissed pursuant to Section 1203.4 may file a petition for certificate of rehabilitation and pardon pursuant to the provisions of this chapter; provided the petitioner has not been incarcerated in any prison, jail, detention facility or other penal institution or agency since the dismissal of the accusatory pleading and is not on probation for the commission of any other felony, and petitioner presents satisfactory evidence of three years residence in this state prior to the filing of the petition."

[3]Section 4852.03 reads in pertinent part:

"The period of rehabilitation shall begin to run upon the discharge of the petitioner from custody due to his completion of the term to which he was sentenced or upon his release on parole or probation, whichever is sooner. For purposes of this chapter, the period of rehabilitation shall constitute three years' residence in this state, plus a period of time determined by the following rules:

". . . . . . . . . . . . . . . . . . . .

"(2) To the three years there shall be added two years in the case of any person convicted of committing any offense which is not listed in subdivision (1) and which does not carry a life sentence." [Petitioner's conviction did not involve one of the crimes set forth in subdivision (1).]

". . . . . . . . . . . . . . . . . . . .

"(4) . . . . Unless and until the period of rehabilitation, as stipulated herein, has passed, the petitioner shall be ineligible to file his petition for a certificate of rehabilitation with the court. Any certificate of rehabilitation which is issued and under which the petitioner has not fulfilled the requirements of this chapter shall be void."

petition, ruled that petitioner was not eligible for a certificate of rehabilitation until five years had run from the date that he was placed on probation (Nov. 27, 1978).

■ At the outset we are confronted with real party's argument that the petition for a certificate of rehabilitation, filed on July 2, 1982, was submitted prematurely. Real party contends that the petition could not be *filed,* under petitioner's theory, until five years after his date of release as a MDSO outpatient (Dec. 9, 1977).

There is no claim that real party was misled or prejudiced by the early filing of the petition. Moreover, real party failed to raise the problem by a motion to dismiss at a time when the defect could have been cured. The premature filing of the petition harmed no one; at its worst it offended a sense of legal propriety. The argument advanced by real party only serves to undercut the policy of liberal construction of section 4852.03 in order "to promote the objective of alleviating the collateral consequences of a felony conviction." (*Daudert* v. *People* (1979) 94 Cal.App.3d 580, 587 [156 Cal.Rptr. 640].) We therefore treat the petition for a certificate of rehabilitation as being timely filed.

■ Petitioner asserts that a "liberal" interpretation would construe the phrase, "discharge of the petitioner from custody due to . . . his release on parole," to include MDSO outpatients. He alludes to certain similarities between a parolee and MDSO outpatient. For example, both are required to have an appropriate program of supervision by state officials. (Cf. §§ 3052 and 3053 with §§ 1603, 1604, and 1605.) Moreover, parolees and MDSO outpatients remain under legal custody subject to reimprisonment. (Cf. § 3056 with §§ 1609-1610.)

On the other hand, there are significant differences in the status of MDSO outpatients and parolees. The statutory scheme governing parolees does not apply to MDSO outpatients. (§ 3000 et seq.) The confinement of MDSO's is for the purpose of *treatment,* not punishment. (*People* v. *Saffell* (1979) 25 Cal.3d 223, 229 [157 Cal.Rptr. 897, 599 P.2d 92].) The Legislature has made a clear distinction between those adjudged incompetent under section 1026 and those classified MDSO. In the former classification, the Penal Code refers to the party as being under "parole treatment." (§§ 1611, 1613.) At no time is the MDSO outpatient referred to in this manner. Accordingly, we find that petitioner's status as a MDSO outpatient is not, for the purposes of section 4852.03, equivalent to being released on parole.

■ Thus, we are confronted with the question of whether section 4852.03 operates to deny petitioner his right of equal protection of the

law. ▮ When reviewing legislative classifications under the equal protection clauses of the United States and California Constitutions, the classification is generally presumed to be constitutional. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10].) "However, once it is determined that the classification scheme affects a fundamental interest or right the burden shifts; thereafter *the state must first establish that it has a* compelling *interest which justifies the law and then demonstrate that the distinctions drawn by the law are* necessary *to further that purpose.*" (Italics in original.) (*People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375].)

▮ Petitioner asserts that his right to vote, a fundamental right, is at stake in this proceeding and urges that this court apply the strict scrutiny test. Article II, section 4 of the California Constitution bars the right to vote to those who are "mentally incompetent or imprisoned or on parole for the conviction of a felony." (See also, Elec. Code, §§ 701, 707; *Flood* v. *Riggs* (1978) 80 Cal.App.3d 138 [145 Cal.Rptr. 573].) Since petitioner is not mentally incompetent, not imprisoned and not on parole, his right to vote is not impaired. Accordingly, our inquiry must be directed to the question of whether or not the statutory classification bears a "rational relationship" to a conceivable legitimate state purpose. (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784 [87 Cal.Rptr. 839, 471 P.2d 487].)

Real party asserts that a "compelling" state interest supports the discriminatory classification scheme. (*People* v. *Saffell, supra,* 25 Cal.3d at pp. 233-235.) In *Saffell,* our Supreme Court held that equal protection does not require that MDSO's receive "good time" credit for good conduct during their institutionalization in a state hospital, even though prison inmates are eligible for such credits while in prison. (See also *People* v. *Superior Court (Waitley)* (1982) 130 Cal.App.3d 39 [180 Cal.Rptr. 790].)

Justice Richardson's opinion in *People* v. *Saffell, supra,* 25 Cal.3d 223 at pages 234-235, enumerates five reasons[4] that underlie the disparate treat-

---

[4]"First, the very concept of 'giving' or 'taking away' time credits might materially interfere with other principles central to the operation of a therapeutic program. We cannot presume that hospital programs in general, and staff-patient relationships in particular, will benefit from a procedure in which patients are threatened with varying lengths of commitment dependent upon their in-hospital behavior. MDSOs are, by statutory definition, individuals who suffer from a 'mental disease, defect, or disorder.' The rationale of 'good time' credit as a reward for behavioral conformity does not readily fit the company of the mentally disturbed. The 'carrot or stick' approach represented by the extension or withdrawal of credit as reward or punishment seems inconsistent with the goals of a hospital treatment facility.

"Second, if a patient intentionally acts in a disruptive manner in a hospital setting, he may be determined to be unamenable to treatment and transferred to state prison. This consequence, readily perceived, itself acts as a deterrent to intentional criminal conduct in

ment of *institutionalized* MDSO's. However, none of the reasons mentioned by Justice Richardson are applicable to the situation presented here. Indeed, the discriminatory treatment of MDSO outpatients only serves to hamper the societal goal of rehabilitation.

An ex-felon is subject to a wide array of "collateral consequences" of his criminal conviction.[5] For example, an ex-felon cannot engage in certain businesses (Bus. & Prof. Code, § 480); must register with local law enforcement authorities if his offense related to certain sex charges (§ 290; but see *In re Reed* (1983) 33 Cal.3d 914 [191 Cal.Rptr. 658, 663 P.2d 216]); loses the right to possess arms (§ 12021); and, if he testifies in court, may be impeached on the basis of his prior felony conviction (Evid. Code, § 788). A number of these disabilities may be removed once the ex-felon has obtained a certificate of rehabilitation.[6] The continued imposition of punitive disabilities—long after the ex-felon has served his time and demonstrated for a period of years that he is able to live crime-free in society—frustrates the goal of rehabilitation and thereby increases the likelihood of recidivism.[7] If the societal goal of rehabilitation is to represent something more than a hollow promise, it is imperative that the ex-felon be freed of these disabilities at the earliest feasible moment.[8]

---

the hospital setting.

"Third, at least part of the 'good time' may be earned by participation in prison rehabilitative and educational programs. It is not clear whether state hospitals currently even provide such 'work, educational, vocational, [or] therapeutic' activities.

"Fourth, denial of 'good time' credits (pursuant to Pen. Code, § 2932) involves a whole panoply of administrative requirements, including a hearing. It is questionable whether hospital administrators have either the ability or the time, given an already burdensome workload, to comply with these additional procedures or whether the type of adversary proceeding which might result, contemplating written notice, investigation, hearing, etc., would assist in furthering the treatment program of the patient.

"Finally, it seems pointless to give an MDSO 'good time' credit against his medical commitment period because [Welfare and Institutions Code] section 6316.2 allows extension of the treatment period if found to be necessary. The concept of 'good time' credit only has meaning within the context of a fixed criminal sentence which may not be so extended.

"For the above reasons, we conclude that the compelling state interest which underlies the effective treatment of MDSOs justifies a legislative determination not to expand the application of 'good time' procedures to MDSO commitments." (*People* v. *Saffell, supra,* 25 Cal.3d 223, 234-235.)

[5]*Carafas* v. *LaVallee* (1968) 391 U.S. 234, 237-238 [20 L.Ed.2d 554, 558, 88 S.Ct. 1556]; *People* v. *Superior Court (Sovereign)* (1983) 144 Cal.App.3d 143 [192 Cal.Rptr. 469].

[6]E.g., see Business and Professions Code section 480, subdivision (b); Evidence Code section 788, subdivision (b); Penal Code section 290.5.

[7]Comment, *Restoration of Rights to Felons in California* (1971) 2 Pacific L.J. 718; Comment, *The Revolving Door: the Effect of Employment Discrimination Against Ex-Prisoners* (1975) 26 Hastings L.J. 1403, 1432-1433.

[8]In *People* v. *Superior Court (Sovereign), supra,* 144 Cal.App.3d at page 154, the court found that the ex post facto increase of the waiting period under section 4852.03 illegally prolonged the period that the ex-felon remained subject to the penalties in the form of continued deprivation of certain civil rights.

Although "the purpose of imprisonment for crime is punishment" (§ 1170, subd. (a)(1)), rehabilitation remains an important consideration in the treatment of criminals. (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 687 [3 Cal.Rptr. 127]; *People* v. *Superior Court (Sovereign), supra,* 144 Cal.App.3d at pp. 148-149.) Professor Herbert Morris in his provocative article *Persons and Punishment* in The Monist (Oct. 1968), argues that punishment derives from a person's inalienable right to be treated as a human being. It gives one who has violated society's rules in the past the opportunity to pay a debt back to society and restore the equilibrium which has been upset. This is a way of achieving rehabilitation. Therapy, which focuses on the present with an eye towards cure, may serve to deny a person his individuality.

Despite this intriguing philosophical dilemma, petitioner has paid his debt to society via the penal and therapy mode. We should not add an additional debt by prolonging the time for which he is eligible for a certificate of rehabilitation. The goal of rehabilitation whether achieved by way of punishment or therapy becomes all the more significant upon the realization that "most offenders will eventually return to society." (*Pell* v. *Procunier* (1974) 417 U.S. 817, 823 [41 L.Ed.2d 495, 502, 94 S.Ct. 2800]; see also 2 Criminal Law Practice (Cont.Ed.Bar 1969) § 19.8.)

Section 4852.03 relates to the rehabilitation goal of the corrections process. (*Daudert* v. *People, supra,* 94 Cal.App.3d at p. 588, fn. 5.) In proceedings brought under section 4852.03, the critical inquiry is whether the ex-felon has demonstrated an ability to conform postinstitutional behavior to the norms of society. The factors which a court considers in determining whether there has been rehabilitation are virtually identical in cases involving MDSO outpatients and as they are in cases involving ex-felons on parole.

Here, the record demonstrates that, for a period beginning with his release from Atascadero on December 9, 1977, petitioner has avoided committing any criminal acts. We are unable to conceive of any logical reason why, for the purposes of timely filing a petition for rehabilitation, this individual ought to be treated any differently than would have been the case had he been given the bureaucratic label of a "parolee" rather than an "MDSO outpatient."[9]

Let a peremptory writ of mandate issue ordering that respondent superior court vacate its order denying petitioner's petition for a certificate of reha-

---

[9]We must emphasize that our opinion is limited to the question of whether petitioner may be allowed to apply for a certificate of rehabilitation. The issue of his eligibility for a certificate of rehabilitation, not being properly before us, must be determined by the trial court (§§ 4852.05, 4852.1, 4852.11, 4852.12).

bilitation on the grounds that it was brought prematurely. Respondent is directed to enter a new order finding that the petition for a certificate of rehabilitation is not premature and conduct further proceedings in accordance with the views expressed in this opinion.

Stone, P. J., and Abbe, J., concurred.

On October 6, 1983, the opinion was modified to read as printed above.