[No. B006577. Second Dist., Div. Six. Apr. 9, 1985.]

In re GILBERT RODRIGUEZ JIMINEZ on Habeas Corpus.

COUNSEL

Kenneth I. Clayman, Public Defender, and Gary R. Nichols, Deputy Public Defender, for Petitioner.

Michael D. Bradbury, District Attorney, and Lynne R. Alfasso, Deputy District Attorney, for Respondent.

OPINION

**GILBERT, J.**—Petitioner Gilbert Rodriguez Jiminez seeks a writ of habeas corpus after being sentenced, April 25, 1983, on a smorgasbord of misdemeanor charges that comprises the daily fare of the master calendar of most municipal courts in the state. These charges include theft (Pen. Code, § 484); attempted theft (former Pen. Code, § 487, subd. 1, Pen. Code, § 664); drunk driving (former Veh. Code, § 23102, subd. (a)); driving with a suspended license (Veh. Code, §§ 14601, subd. (a), 14601.2); reckless driving (Veh. Code, § 23103); and failure to appear (Pen. Code, § 1320). Petitioner raises two contentions: first, that he is entitled to have his multiple jail sentences run concurrently; second, that he is entitled to good conduct credit for time spent at the California Rehabilitation Center (CRC). We reject petitioner's first argument, but find that he is entitled to receive conduct credit for the period of his confinement at CRC.

FACTS

Within the two-year period prior to April of 1983, petitioner was convicted of assorted theft misdemeanors related to substance abuse. After a short time in custody, petitioner was released on probation. Apparently, leniency did not make an impression, because petitioner was arrested again on new theft-related charges. This led to his conviction and sentence on April 25, 1983.

This time, the court sought to reach petitioner with a more persuasive message. He was sentenced to five and one-half years in jail. From among a generous assortment of convictions and probation violations, the trial judge sentenced petitioner to several consecutive and concurrent sentences.

The consecutive sentences were imposed so that each was consecutive to the sentence immediately preceding it. For example, sentence number one was one year in county jail, sentence number two was 180 days in county jail to be served consecutively to sentence number one; sentence number three was 180 days in the county jail to be served consecutively to sentence number two. Some of the remaining sentences were designated as concurrent.

On April 28, 1983, the District Attorney of Ventura County filed a petition in the superior court pursuant to Welfare and Institutions Code sections 3050 and 3051 to institute drug addiction proceedings against petitioner. At a court hearing held on May 26, 1983, petitioner was found to be an addict, or in imminent danger of becoming an addict, and was ordered committed to CRC for the maximum term of 16 months. The superior court discharged petitioner from CRC on February 29, 1984, and referred him to the municipal court for further action.

Proceedings were again held in the municipal court on March 21, 1984, and the sentences of April 25, 1983, were reimposed upon petitioner. On this occasion the court was more emphatic. It structured its order so that each of the consecutive sentences was to run consecutively to the previous sentence, *and to all previous sentences imposed* as well. The court refused to grant petitioner conduct credit for the period in which he was committed to CRC.

DISCUSSION

I

CONSECUTIVE SENTENCING

Petitioner argues that the sentences are deemed to be concurrent, by operation of law, because the court did not specify in its order of April 25, 1983, that each of the consecutive sentences was to run consecutively to each other. We find this assertion to be without merit.

■ The trial court is vested with the discretion to determine whether the several sentences shall run consecutively or concurrently. (Pen. Code, § 669; *In re Sandel* (1966) 64 Cal.2d 412, 416 [50 Cal.Rptr. 462, 412 P.2d 806].) Petitioner does not challenge the trial court's exercise of its discretion. Rather, he objects to the way the trial court imposed consecutive sentences. He asserts that Penal Code section 669 mandates that a trial court imposing consecutive sentences shall specify the manner in which each term

of imprisonment is to run in relation to each of the other sentences.

Penal Code section 669 states, "[w]hen any person is convicted of two or more crimes, . . . the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment . . . shall run concurrently or consecutively; . . . [¶] In the event that the court at the time of pronouncing the second or other judgment upon such person . . . fails to determine how the terms of imprisonment shall run in relation to each other. . . . . Upon the failure of the court so to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently."

Subsequent judgments are deemed to run concurrently only if the court neglects to state "at the time of pronouncement of the second or other judgment," the manner in which the sentences are to be served. (e.g., see *People* v. *Ewing* (1961) 198 Cal.App.2d 364 [18 Cal.Rptr. 9].) Here, there was no failure of the trial court either at the April 25, 1983, sentencing hearing, or at the March 21, 1984, sentencing hearing, to determine that the subsequent judgments shall run consecutively. The manner in which the court imposed consecutive sentences at both hearings was correct. It is good practice for the court to say, for example, that sentence number four is consecutive to sentences number one, two and three. It is also sufficient for the court to state, as it did on April 23, 1983, that sentence number two is consecutive to sentence number one, sentence number three is consecutive to sentence number two, and so on. This is tantamount to determining how the sentences shall run in relation to each other, because sentence number three is also necessarily consecutive to sentence number one and two. Accordingly, we find that the trial court properly designated that petitioner's sentences were to be served consecutively.[1]

## Conduct Credit For CRC Custody Time

 The availability of conduct credits is not compelled by the constitution for those individuals who find themselves placed in treatment facilities. (*People* v. *Sage* (1980) 26 Cal.3d 498, 501 [165 Cal.Rptr. 280, 611 P.2d 874]; *In re Werden* (1977) 76 Cal.App.3d 79, 84 [142 Cal.Rptr. 622].) In 1980 the Legislature amended Welfare and Institutions Code section

---

[1]Having found that the court properly imposed consecutive sentences at the April 23, 1983, hearing, we need not determine the petitioner's argument that the court was without jurisdiction to correct its judgment at the hearing held on March 21, 1984.

3201, subdivision (c).[2] The amendment limited the length of a CRC confinement to a term equal to the determinate sentence for the underlying offense. (*In re Morales* (1981) 115 Cal.App.3d 456, 459 [171 Cal.Rptr. 425]; 64 Ops.Cal.Atty.Gen. 278, 280-281 (1981).)

It is well-established that Welfare and Institutions Code section 3201, subdivision (c) grants to felons committed to CRC the "functional equivalent of a right to good time/work time credit . . . ." (*In re Martin* (1981) 125 Cal.App.3d 896, 900 [178 Cal.Rptr. 445]; see also Welfare & Institutions Code § 3305; *In re Mabie* (1984) 159 Cal.App.3d 301, 306 [205 Cal.Rptr. 528]; *People* v. *Talton, supra,* 145 Cal.App.3d at pp. 730-731; *People* v. *Mobley* (1983) 139 Cal.App.3d 320, 323-324 [188 Cal.Rptr. 583]; *People* v. *Hankins* (1982) 137 Cal.App.3d 694 [187 Cal.Rptr. 210].) We find no basis to deprive misdemeanants committed to CRC of conduct credits.

■ "When reviewing legislative classifications under the equal protection clauses of the United States and California Constitutions, the classification is generally presumed to be constitutional. [Citation omitted.] 'However, once it is determined that the classification scheme affects a fundamental interest or right the burden shifts; thereafter *the state* must first establish that it has a *compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are *necessary* to further that purpose.' (Italics in original.) [Citation omitted.]'" (*Ayala* v. *Superior Court* (1983) 146 Cal.App.3d 938, 943 [194 Cal.Rptr. 665].)

The right to personal liberty is regarded to be a fundamental interest. (*People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55].) Legislation that proscribes the award of conduct credit serves to significantly impair an inmate's right to his freedom, and requires that a review of such legis-

---

[2]Welfare and Institutions Code section 3201, subdivision (c), reads in relevant part: "(c) Any person committed pursuant to Article 2 (commencing with Section 3050), whose execution of sentence in accordance with the provisions of Section 1170 of the Penal Code was suspended pending a commitment pursuant to Section 3051, who has spent, pursuant to this chapter, a period of time in confinement or in custody, excluding any time spent on outpatient status, equal to that which he or she would have otherwise spent in state prison had sentence been executed, *including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code,* shall, upon reaching such accumulation of time, be released on parole under the jurisdiction of the Narcotic Addict Evaluation Authority subject to all of the conditions imposed by the authority and subject to the provisions of Article 1 (Commencing with Section 3000) of Chapter 8 of Title 1 of Part 3 of the Penal Code. . . ." (Italics added.)

An inmate's entitlement to conduct credits while at CRC is, of course, dependent upon whether he has in fact *earned* said credits. (Cf. *People* v. *Talton* (1983) 145 Cal.App.3d 729, 732 [193 Cal.Rptr. 660].) The question of petitioner's conduct while at CRC is not at issue in this proceeding.

lation be made under the strict scrutiny standard. (*People* v. *Saffell* (1979) 25 Cal.3d 223, 228 [157 Cal.Rptr. 897, 599 P.2d 92].)[3]

Even though the Legislature has stated that the "purpose of imprisonment for crime is punishment" (Pen. Code, § 1170, subd. (a)(1)), the notion of "rehabilitation remains an important consideration." (*Ayala* v. *Superior Court, supra,* 146 Cal.App.3d at p. 945; see also *People* v. *Caruso, supra,* 161 Cal.App.3d 13, 18.)

The necessity of providing rehabilitation and treatment to narcotic addicts guilty of committing crimes is particularly applicable to the CRC program. (Welf. & Inst. Code § 3000; *People* v. *Ramirez* (1979) 25 Cal.3d 260, 271 [158 Cal.Rptr. 316, 599 P.2d 622]; *People* v. *Hankins, supra,* 137 Cal.App.3d at p. 700)[4] The statutory scheme is premised upon the realization this class of offenders will be placed back upon the streets within a relatively short period of time, and unless they can be cured of their addiction problems, the chance of recidivism is substantial. "There can be little doubt that one of the Legislature's principal concerns in this area is repetitive petty thefts by narcotics users. 'The program was designed to avoid the hopeless "revolving door" situation of jailing addicts for crimes committed under compulsion of habit, freeing them on parole (or at the expiration of their term) and then rejailing them upon their inevitable return to addiction and renewed criminality.' [Citation omitted.] The appropriateness of the system which the Legislature has designed (and redesigned from time-to-time) for the involuntary *treatment* and *rehabilitation* of that class of persons has been upheld by the courts. (Citations omitted.)" (*People* v. *Gray* (1977) 72 Cal.App.3d 18, 21 [139 Cal.Rptr. 805].) (Italics added.) The availability of conduct credits serves as an incentive for success and thus aids the CRC goal of rehabilitation. (*People* v. *Hankins, supra,* 137 Cal.App.3d at p. 698.) It also encourages participants to cooperate and to succeed in the program.

The years following the enactment of the Determinate Sentencing Act witnessed a decline in the number of felons sent to CRC. The reason for

---

[3]In *Saffell,* our Supreme Court applied the strict scrutiny test in determining that MDSO patients were not entitled to earn conduct credits available to inmates of penal institutions. We decline the offer of the district attorney to follow the rational basis test. (See also *In re Mabie, supra,* 159 Cal.App.3d at p. 307, fn. 2; *People* v. *Caruso* (1984) 161 Cal.App.3d 13, 17-18 [207 Cal.Rptr. 221].)

[4]Welfare and Institutions Code section 3000 reads, in pertinent part, that "It is the intent of the Legislature that persons addicted to narcotics, or who by reason of repeated use of narcotics are in imminent danger of becoming addicted, shall be treated for such condition and its underlying causes, and that such treatment shall be carried out for nonpunitive purposes not only for the protection of the addict, or person in imminent danger of addiction, against himself, but also for the prevention of contamination of others and the protection of the public."

this decline is that felons, otherwise eligible for CRC commitment, would rather go to prison where they could earn conduct credits and serve a shorter term in custody than if they had chosen to be incarcerated in a CRC facility. ■ The 1980 amendment to Welfare and Institutions Code section 3201 was enacted with the intent of reducing the CRC term so that the term for a felon at CRC would be equivalent to his term in state prison. (*Review of Selected California Legislation* (1980) 12 Pacific L. J. 366, 367.)

The amendment to section 3201 additionally reflects the Legislature's continuing recognition that the availability of conduct credits to inmates is an important ingredient of the rehabilitative process. (*People* v. *Austin* (1981) 30 Cal.3d 155, 163 [178 Cal.Rptr. 312, 636 P.2d 1]; *People* v. *Caruso, supra,* 161 Cal.App.3d at pp. 18-19.) ■ Laws which do not provide for the allowance of conduct credit to misdemeanants housed at CRC do not further the state's compelling interest in the rehabilitation of its prisoners.

The district attorney maintains that unequal treatment of misdemeanants is justified because it is necessary for an inmate to spend a long period of confinement at CRC, deprived of narcotics, in order for the withdrawal symptoms to run their course. (*In re De La O* (1963) 59 Cal.2d 128, 140 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; *In re Morales, supra,* 115 Cal.App.3d at p. 460.) A misdemeanant may be kept at CRC longer than the maximum time he would be required to serve in jail, had he opted for jail instead of CRC. Welfare and Institutions Code section 3201, subdivision (a) provides that a misdemeanant committed to CRC may stay a maximum of 16 months. (*People* v. *Gray, supra,* 72 Cal.App.3d at pp. 22-23.) The district attorney argues that the allowance of conduct credits to misdemeanants would interfere with the therapeutic process of misdemeanants in that they would be released from CRC prior to the elimination of psychological dependence upon drugs.

Petitioner does not propose to shorten misdemeanant commitments to CRC. Nor do we. Our holding is limited to those misdemeanants who are facing incarceration *after release* from CRC. In such instances, there is no interference with the length of time spent by the misdemeanant at CRC.

The state has an interest to encourage misdemeanants to seek treatment at CRC. The current policy of not allowing for conduct credits to misdemeanants who are remanded to a jail term upon discharge from CRC serves to subvert that interest by increasing the punishment for those inmates who are placed at CRC.

In *People* v. *Hankins, supra,* 137 Cal.App.3d at p. 699, fn. 10, the court recognized that CRC commitments are, in practice, voluntary. "Few, if

any, addicts are going to volunteer for CRC commitment knowing that if they are found 'unamenable to treatment' they will be deprived of conduct credits." (*Id.*, at p. 699.) This observation is as true for misdemeanants as it is for felons.

In *People* v. *Sage, supra,* 26 Cal.3d at p. 508, our Supreme Court determined that, under the notions of equal protection, felons were entitled to conduct credit under Penal Code section 4019 even though the statute in question concerned conduct credit for misdemeanants. The same notions of equal protection entitle misdemeanant CRC inmates to conduct credit after release from CRC even though they are not mentioned in Welfare and Institutions Code section 3201, subdivision (c).

In the present case, petitioner faced a five and one-half year term in custody. The order for his incarceration at CRC meant that he would serve the first portion of his term at that facility.[5] Upon discharge from CRC he was returned to Ventura County so that he could serve the remaining time on his multiple convictions. Under *In re Martin, supra,* 125 Cal.App.3d 896, 900, and *People* v. *Hankins, supra,* 137 Cal.App.3d 694, if he were a felon, his sentence would be reduced by the amount of conduct credit earned at CRC.

There is no plausible reason to disallow a similar reduction in the jail sentence of a misdemeanant by the amount of conduct credit he earns during his stay at CRC.

We leave it to the trial court to determine the manner in which the conduct credit should be applied to petitioner's various misdemeanor convictions. Suffice it to say that the allocation of time earned due to conduct credit shall reduce the total period of incarceration by the amount of that conduct credit.

Accordingly, the writ is discharged. Petitioner is remanded to the custody of the sheriff for further proceedings in the municipal court which is ordered to credit petitioner with 139 days of conduct credit.

Stone, P. J., and Abbe, J., concurred.

---

[5]The record before us reveals that petitioner served 96 days of his CRC commitment at the California Institute for Men—a state prison facility. (Pen. Code, § 2000 et seq.) The remaining portion of his CRC time was spent in a facility under the "supervision, management and control" of the Department of Corrections. (Welf. & Inst., §§ 3300, 3305.)