[No. E002492. Fourth Dist., Div. Two. May 29, 1986.]

In re SAMMY C. LOPEZ on Habeas Corpus.

**COUNSEL**

Sammy C. Lopez, in pro. per., for Petitioner.

John K. Van de Kamp, Attorney General, Keith I. Motley and Robert Shaw, Deputy Attorneys General, for Respondent.

**OPINION**

**RICKLES, Acting P. J.**—On November 24, 1982, petitioner Sammy C. Lopez was committed to the California Rehabilitation Center (CRC) at Norco. On June 12, 1984, he was released on parole. On June 14, 1984, he submitted to an anti-narcotics test which resulted in a positive morphine reading.[1] On June 27, 1984, petitioner was arrested for use of heroin. In his possession officers found a purple bandana wrapped around two syringes with needles, two plungers, a pair of tweezers, two burnt bottle caps, and two cut sections of a rubber balloon. Petitioner admitted injecting heroin on June 25, 1984. He was returned to the CRC as a parole violator on July 5, 1984.

---

[1] At an interview, petitioner admitted injecting himself with heroin on June 12, 1984, the day of his release from the CRC. He said he did not realize he was going to be released on parole that day.

Lopez now petitions for a writ of habeas corpus, contending he is being wrongfully held by the CRC. He asserts, under Penal Code section 3057, confinement pursuant to a revocation of parole may not exceed 12 months.[2] The Welfare and Institutions Code, which regulates civil commitment in the CRC, contains no such 12-month limitation.[3] ▮ Petitioner con-

---

[2]Penal Code section 3057 provides in pertinent part:

"(a) Confinement pursuant to a revocation of parole in the absence of a new conviction and commitment to prison under other provisions of law, shall not exceed 12 months, . . ."

[3]Welfare and Institutions Code section 3201, subdivision (c), provides in pertinent part:

"A person on parole who violates the rules, regulations or conditions imposed by the authority shall be subject to being retaken and returned to the California Rehabilitation Center as prescribed in such rules, regulations, or conditions and in accordance with the provisions of Sections 3151 and 3152. At the termination of this period of parole supervision or of custody in the California Rehabilitation Center, the person shall be returned by the Director of Corrections to the court from which such person was committed, which court shall discharge him or her from the program and order him or her returned to the court which suspended execution of such person's sentence to state prison."

Welfare and Institutions Code section 3151 provides in pertinent part:

"After an initial period of observation and treatment, and subject to the rules and policies established by the Director of Corrections, whenever a person committed under Article 2 or Article 3 of this chapter has recovered from his addiction or imminent danger of addiction to such an extent that, in the opinion of the Director of Corrections, release in an outpatient status is warranted, the director shall certify such fact to the authority. If the director has not so certified within the preceding 12 months, in the anniversary month of the commitment of any person committed under this chapter his case shall automatically be referred to the authority for consideration of the advisability of release in outpatient status. Upon any such certification by the director or such automatic certification, the authority may release such person in an outpatient status subject to all rules and regulations adopted by the authority, and subject to all conditions imposed by the authority, whether of general applicability or restricted to the particular person released in outpatient status, and subject to being retaken and returned to inpatient status as prescribed in such rules, regulations, or conditions. The supervision of such persons while in an outpatient status shall be administered by the Department of Corrections. Such persons are not subject to the provisions of Penal Code Section 2600."

Welfare and Institutions Code section 3152 provides:

"The rules for persons in outpatient status shall include but not be limited to close supervision of the person after release from the facility, periodic and surprise testing for narcotic use, counseling and return to inpatient status at the California Rehabilitation Center or its branches at the discretion of the authority, if from the reports of agents of the Department of Corrections or other information including reports of law enforcement officers as to the conduct of the person, the authority concludes that it is for the best interests of the person and society that this be done."

The California Administrative Code, title 15, section 5125 provides:

"The Board shall consider for release to outpatient status or parole those individuals who meet the following criteria:

"(a) Certified. Any individual (whether a new commitment to the Civil Addict Program, or an outpatient or a parolee returned as a result of violating his/her conditions of release/ parole) who has been certified by the director or the director's designee as having recovered from his/her addiction or imminent danger of addiction to such an extent that in the opinion of the director or the director's designee release in outpatient status or parole is warranted. (See Welfare and Institutions Code Sections 3151 and 3201(c).)

"(b) Annual Review. Any new commitment, or outpatient or parolee who has been returned to the California Rehabilitation Center or branch thereof and who has not been certified to the Board for release consideration within the preceding 12 months. (See Sections 3151 and

cludes the CRC's failure to release him after 12 months is a denial of his right to equal protection. As ordered by the Supreme Court, our review is limited to this one issue.

■ As noted in *Ayala* v. *Superior Court* (1983) 146 Cal.App.3d 938, 943 [194 Cal.Rptr. 665], "[w]hen reviewing legislative classifications under the equal protection clauses of the United States and California Constitutions, the classification is generally presumed to be constitutional. [Citation omitted.] 'However, once it is determined that the classification scheme affects a fundamental interest or right the burden shifts; thereafter *the state must first establish that it has a compelling interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose.*' (Italics in original.) [Citation omitted.]" (See *In re Jiminez* (1985) 166 Cal.App.3d 686, 691 [212 Cal.Rptr. 550].) Personal liberty is such a fundamental interest. (*People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375].)

■ A compelling state interest underlies the difference in a civil addict's recommitment and that of a state prisoner's, upon parole revocation. The compelling state interest is the treatment of drug addiction to prevent drug-related crime. (*In re Mabie* (1984) 159 Cal.App.3d 301, 308 [205 Cal.Rptr. 528].) Review of legislative intent reveals the justification for divergent treatment. (*People* v. *Myers* (1972) 6 Cal.3d 811, 816-817 [100 Cal.Rptr. 612, 494 P.2d 684].) The intent of the Legislature in imposing sentences under the Penal Code is punishment (Pen. Code, § 1170, subd. (a)(1) & subd. (e)), although rehabilitation is an important consideration. (*People* v. *Caruso* (1984) 161 Cal.App.3d 13, 18 [207 Cal.Rptr. 221].) Under the penal system, an inmate receives a determinate sentence, subject to reduction for credits earned. In no case will he serve less than one-half his determinate sentence. Violation of parole subjects an inmate to further punishment.

The Legislature manifested a different intent for civil commitments. Narcotics addiction is viewed as an illness. (*People* v. *Myers, supra,* 6 Cal.3d 811, 817.) Thus, "[i]t is the intent of the Legislature that persons addicted to narcotics, or who by reason of repeated use of narcotics are in imminent danger of becoming addicted, shall be treated for such condition and its underlying causes, and that such treatment shall be carried out for nonpunitive purposes not only for the protection of the addict, or person in

3201(c) of the Welfare and Institutions Code.)"
    The California Administrative Code, title 15, section 5126 provides:
    "Each case shall be judged on its individual merit, without prejudice. In deciding whether to release an individual to outpatient status or parole the board shall consider all relevant factors."

imminent danger of addiction, against himself, but also for the prevention of contamination of others and the protection of the public.'' (Welf. & Inst. Code, § 3000.)

*In re Jiminez, supra,* 166 Cal.App.3d 686, 692, further recognized the statutory scheme is based upon the realization unless the offender is cured of his addiction, his chance of recidivism is substantial. '' ''There can be little doubt that one of the Legislature's principal concerns in this area is repetitive petty thefts by narcotics users. ''The program was designed to avoid the hopeless 'revolving door' situation of jailing addicts for crimes committed under compulsion of habit, freeing them on parole (or at the expiration of their term) and then rejailing them upon their inevitable return to addiction and renewed criminality.'' [Citation omitted.] The appropriateness of the system which the Legislature has designed (and redesigned from time-to-time) for the involuntary *treatment* and *rehabilitation* of that class of persons has been upheld by the courts. [Citations omitted.]' '' (Original italics.)[4]

Just as the legislative intent for civil commitment differs from penal commitment, so does length of commitment. As provided in Welfare and Institutions Code section 3201, subdivision (c), while a committee's maximum term is limited by his determinate sentence law term, less conduct credits, he is subject to release in an outpatient status when he recovers from his addiction or imminent danger of addiction. Release is tied to rehabilitation. Early rehabilitation could result in the release of a civil committee long before his penal counterpart.

Based upon the above, we find a compelling justification for distinction between state prison inmates and civil addict committees. We also find the distinction necessary to further the purpose of curing drug addiction.

---

[4]Other recent cases have focused upon the distinction between civil and criminal commitment:

"The dissimilarity of purpose between imprisonment and CRC commitment is emphasized in *People* v. *Reynoso* (1966) 64 Cal.2d 432, 435 [50 Cal.Rptr. 468, 412 P.2d 812]: 'Commitment under article 2 of the act governing commitment and corrective treatment of narcotic addicts does not imprison the subject, is not a punishment for crime, is not penal confinement, and the act is not a penal statute. Such commitment constitutes compulsory treatment of the addict as a sick person. [Citations.] [¶] In enacting the subject statute, the Legislature intended to create a new program for the confinement (which in truth is a quarantine rather than penal sanction), treatment and rehabilitation of narcotics addicts. [Citation.]' '' (*People* v. *Martinez* (1980) 106 Cal.App.3d 524, 538-539 [165 Cal.Rptr. 160].)

Return to the CRC for a period greater than 12 months, upon revocation of parole, may be required for effective narcotics treatment.[5] Flexibility, within given bounds, is required where the goal is to cure rather than to punish. Petitioner's reinvolvement in drugs, while on parole and upon his return to the CRC, and recalcitrant behavior demonstrate his need for further treatment. We will not shackle petitioner's physicians to a 12-month time table.

Petitioner has been accorded the benefits of civil commitment and has avoided the many rigors of penal life. He, however, has not availed himself of CRC programs and his adjustment to the institution has been poor. He continues to use drugs and be a disciplinary problem. Petitioner now seeks protection under the penal laws he has so successfully avoided.

Petitioner has chosen a civil commitment path and he will now follow it to its conclusion. He cannot pick and choose the aspects of the various systems he thinks are best suited to him.

We are not inclined to dismantle the CRC by bouncing back and forth between the Welfare and Institutions Code and Penal Code in order to selectively reduce the time available for the cure and treatment of drug addiction.

The writ of habeas corpus is denied.

McDaniel, J., and Cramer, J.,* concurred.

---

[5] In so concluding, we are not unmindful of the Supreme Court's directing our attention to *People* v. *Olivas, supra,* 17 Cal.3d 236, 257, wherein the court concluded Welfare and Institutions Code section 1770 was unconstitutional insofar as it authorized the Youth Authority to maintain control over misdemeanants committed to its care for any period of time in excess of the maximum jail term permitted by statute for the offense or offenses committed. The case before us is distinguishable. We are not concerned with the maximum term for which a civil addict can be committed, rather with his obtaining release prior to the expiration of the full term imposed. (See *People* v. *Austin* (1981) 30 Cal.3d 155, 162 [178 Cal.Rptr. 312, 636 P.2d 1].)

*Assigned by the Chairperson of the Judicial Council.