[Crim. No. 12910. Fourth Dist., Div. Two. Aug. 5, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLESS AUDREY TALTON, Defendant and Appellant.

---

COUNSEL

Quin Denvir, State Public Defender, and Richard Lennon, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Peter Quon, John W. Carney and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**THE COURT.** *—This appeal concerns entitlement to behavior and participation credits (conduct credits) for time spent as a California Rehabilitation Center (CRC) *inpatient.* Involved are Riverside Superior Court case numbers 14425 and 14719 which were consolidated in 1977 when defendant was committed to CRC.

In August 1981, pursuant to *In re Morales* (1981) 115 Cal.App.3d 456 [171 Cal.Rptr. 425], defendant filed a motion to fix a determinate term. Her commitment to CRC was terminated and she was committed to state prison. Custody credits were given in each case for jail time and related conduct credits together with credits for CRC inpatient time. CRC inpatient conduct credits were not given.

On appeal defendant contends that in each case she was entitled to conduct credits for her time spent as a CRC inpatient.

 Defendant is entitled to *earned* CRC inpatient conduct credits against her state prison sentence. (*People* v. *Mobley* (1983) 139 Cal.App.3d 320,

---

*Before Morris, P. J., Kaufman, J., and McDaniel, J.

323-324 [188 Cal.Rptr. 583]; *People* v. *Hankins* (1982) 137 Cal.App.3d 694, 697-700 [187 Cal.Rptr. 210]; *In re Martin* (1981) 125 Cal.App.3d 896, 900-903 [178 Cal.Rptr. 445]; see also *People* v. *Rutledge* (1983) 139 Cal.App.3d 620, 625 [188 Cal.Rptr. 846] [Attorney General "concedes appellant is entitled to conduct credits for the inpatient time at CRC"].)

Unlike *Rutledge,* here the People do not concede that defendant is entitled to CRC inpatient conduct credits. Instead, it is argued that *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], clearly precludes such credits. *Sage* held, in part, that neither Penal Code section 4019 nor Penal Code section 2931 authorized conduct credits against a state prison sentence for time spent in a state hospital as a mentally disordered sex offender. The court specifically noted that Penal Code section 4019 did not authorize CRC conduct credits. (At pp. 502-503.) *Sage* does not control the determinations in *Martin, Hankins,* and *Mobley* which were founded on equal protection grounds rather than on an interpretation of sections 4019 and 2931.

The People also rely on *People* v. *Austin* (1981) 30 Cal.3d 155 [178 Cal.Rptr. 312, 636 P.2d 1], and *In re Ricky H.* (1981) 30 Cal.3d 176 [178 Cal.Rptr. 324, 636 P.2d 13], which determined that adult and juvenile offenders committed to California Youth Authority are not entitled to either presentence or postsentence conduct credits. These two cases were considered and rejected as not controlling by *Hankins* and *Martin. Austin* and *Ricky H.* do not control here.[1]

The *Martin* decision went beyond its holding of eligibility for CRC inpatient conduct credits and added that the Legislature intended " 'credit' to apply irrespective of the nature of his conduct while in CRC." (125 Cal.App.3d at p. 902.) *Martin* based this view on Welfare and Institutions Code section 3201, subdivision (c), which then provided that a CRC patient could not be confined for a period of time longer than he would have served on the underlying felony, taking conduct credits into account. (125 Cal.App.3d at p. 900, fn. 3.) While that section does not mandate conduct credits for those excluded from CRC, the statute served as a springboard for cases determining that equal protection mandates CRC inpatient conduct credits for those excluded from CRC and sentenced to state prison.

*Martin* looked to the terms of Welfare and Institutions Code section 3201, subdivision (c), and said that the statute "appears to give him credit even

---

[1] In the case of a California Youth Authority commitment, conduct is a basic factor in the rehabilitative process leading to release. (*People* v. *Austin, supra,* 30 Cal.3d at pp. 164-166.) There is no showing here that CRC release is controlled by behavior as contrasted with successful treatment.

when he does not 'participate' or when his conduct might not have warranted it in another institution." (At p. 900.) The concept of applying *unearned* conduct credits generated our request for additional briefing from the parties, which was received.[2]

We do not agree with that portion of the *Martin* decision which would apply *unearned* CRC conduct credits against a state prison sentence. The relevant language of Welfare and Institutions Code section 3201, subdivision (c), at the time *Martin* was decided provided: "Any person . . . who has spent . . . a period of time in confinement or in custody, excluding any time spent on outpatient status, equal to that which he or she would have otherwise spent in state prison had sentence been executed, including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) . . . shall . . . be returned . . . to the court. . . ."

Welfare and Institutions Code section 3201, subdivision (c), was amended effective September 17, 1981, which is the same day CRC inpatient conduct credits were denied here. Under the second paragraph of the amended version, the CRC commitment period (outpatient and inpatient combined) is to be equal to the prison term which would have been imposed pursuant to Penal Code section 1170, "notwithstanding good time and participation credit provisions of" Penal Code sections 2930-2935. Thus, conduct credits are not taken into account in determining the commitment period. (*In re Taylor* (1982) 132 Cal.App.3d 260, 262-263 [183 Cal.Rptr. 34].) When the maximum commitment period is reached the person is placed on parole. The maximum possible sentence of a state prison inmate also excludes institutional conduct credits.

The first paragraph of the amended version of the subdivision concerns actual incarceration and provides that a patient will be placed on parole when the period of confinement or custody, excluding outpatient time, equals the time the person would have spent in prison, taking into account the "application of good behavior and participation credit provisions" of Penal Code sections 2930-2935.

While the current language of the statute differs somewhat from the statutory language considered by *Martin*, the equal protection rationale of *Mar-*

---

[2]The defendant does not argue that she should receive conduct credits "irrespective of the nature of [her] conduct while in CRC." From this we understand that the parties agree that *unearned* conduct credits should not be given. Certainly, there is no rational justification for giving a former CRC patient *unearned* conduct credits on a state prison sentence when a state prison inmate is only entitled to *earned* conduct credits.

The parties agree that the sentencing court must determine CRC inpatient conduct credits at the time of imposing the state prison sentence. The Attorney General adds that the Department of Corrections also concurs in that conclusion.

*tin* and later cases remains unaffected. However, neither the prior nor current statutory language justifies the *Martin* conclusion that the statute shows a legislative intent to provide *unearned* conduct credits.

Both prior and present versions of Welfare and Institutions Code section 3201, subdivision (c), refer to the "good behavior and participation credit *provisions* of Article 2.5 (*commencing with* Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code," (italics added). Article 2.5 covers Penal Code sections 2930-2935. Thus, the Legislature referred to the whole of article 2.5 as evidenced by use of the words "provisions" and use of "commencing with." When the statute is correctly read, it refers not only to the granting of custody credits but also to the forfeiture of custody credits because sections 2930-2935 cover both the giving and forfeiture of credits.

We have received varying points of view from the parties concerning the mechanics involved in the sentencing court's determination of CRC inpatient custody credits. These positions fail to recognize that Welfare and Institutions Code section 3201, subdivision (c), already requires the Department of Corrections to apply the provisions of Penal Code sections 2930-2935 to CRC patients and that the credit and forfeiture procedures are, presumably, already in place and operational.[3]

The manner in which credits are to be applied by the sentencing court is straightforward and familiar. The sentencing court is required to apply "rehabilitation facility" credits (Pen. Code § 2900.5, subd. (a)) to the sentence which would include application of CRC inpatient conduct credits. Welfare and Institutions Code section 3201, subdivision (c), requires the Department of Corrections to compute CRC conduct credits in the manner prescribed by Penal Code sections 2930-2935. Thus, the Department of Corrections "can readily provide the court with the necessary computation and/or records. Any dispute over the right to credit, the number of days of credit, or the judgment or judgments to which the credits are applicable can then be resolved at the probation and sentencing hearing." (*People* v. *Sage, supra,* 26 Cal.3d at p. 509.)

Finally, we note that the Attorney General is incorrect in the suggestion that in the usual CRC exclusion case the defendant would not be entitled to inpatient conduct credits because exclusion means a failure to earn such

---

[3]We say "presumably" as we have nothing in the record before us which discloses whether or not the Department of Corrections is complying at CRC with the provisions of Penal Code sections 2930-2935. Because the first paragraph of Welfare and Institutions Code section 3201, subdivision (c), requires such compliance in order for the Department of Corrections to make proper calculations for parole eligibility purposes, we presume that such official duty is being performed.

credits. Exclusion may or may not mean the absence of such credits being earned. Exclusion from CRC may be based on circumstances other than the absence of proper conduct while an inpatient. For instance, exclusion could be related solely to misconduct while an outpatient. Further, a mixture of good and bad behavior while an inpatient could result in partial conduct credits being given. The Attorney General made the same point in the *Hankins* case and it was rejected in this language: "One problem with the Attorney General's argument is there has been no showing 'unamenability' to CRC treatment necessarily rests upon misconduct while undergoing inpatient treatment." (*People* v. *Hankins, supra,* 137 Cal.App.3d at p. 698, fn. 6.)

That portion of the judgment which denies the defendant CRC inpatient conduct credits is reversed with directions to the sentencing court to grant the defendant earned CRC inpatient conduct credits. In all other respects the judgment is affirmed.