[No. S041854. Aug. 31, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH ANDREW JONES, Defendant and Appellant.

**COUNSEL**

Alison Hardy, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—We granted review in this matter to resolve an issue that has been, and continues to be, much litigated in the lower courts: Is a convicted felon who receives an involuntary civil commitment to the California Rehabilitation Center for narcotic addiction for an offense perpetrated on or after January 1, 1983, entitled to earn credits under Welfare and Institutions Code section 3201, subdivision (c), for good behavior and participation pursuant to Penal Code section 2931—in spite of the fact that subdivision (d) of Penal Code section 2931 states that "[t]his section shall not apply to any person

whose crime was committed on or after January 1, 1983"? As we shall explain, we conclude that he is not.

## I

On his plea of guilty, defendant was convicted in the superior court of the felony of selling cocaine, on or about September 26, 1991, in violation of Health and Safety Code section 11352. Subsequently, he received imposition of a determinate sentence of five years in state prison. Criminal proceedings were adjourned and execution of sentence was suspended pending a determination whether he was subject to involuntary civil commitment to the California Rehabilitation Center on the ground that he was addicted to narcotics, or was in imminent danger of becoming so. After a hearing, he was committed to the center on a finding that he was indeed in such a condition. Criminal proceedings remained adjourned and execution of sentence remained suspended. After he had spent apparently 382 days at the center, he was excluded as unsuitable. Criminal proceedings were reinstated. The original determinate sentence was reimposed. Certain credits were awarded. But, against his claim for credits that would apparently have amounted to 191 days, none were given under Welfare and Institutions Code section 3201, subdivision (c), for good behavior and participation pursuant to Penal Code section 2931: on the authority of *People* v. *Madison* (1993) 17 Cal.App.4th 783, 787, 789-790 [22 Cal.Rptr.2d 157] (hereafter sometimes *Madison*), such credits were held not to be available, by operation of subdivision (d) of Penal Code section 2931, because he had perpetrated his offense after January 1, 1983.

After modifying the award of credits in defendant's favor on grounds not pertinent here, the Court of Appeal affirmed. Adhering to *Madison*, it upheld the superior court's denial of good behavior and participation credits on the indicated basis.

On defendant's petition, we granted review. We now affirm.

## II

Section 2931 was added to the Penal Code in 1976 as part of the Determinate Sentencing Act. Since that time, it has authorized the Director of Corrections, in its subdivision (a), to provide credits for good behavior and participation to reduce a convicted felon's term in state prison under a determinate sentence on a one-for-two basis.

Subdivision (c) was added to Welfare and Institutions Code section 3201 in 1980.[1] Now, as then, it has stated in pertinent part that the maximum duration of involuntary civil commitment to the California Rehabilitation Center for narcotics addiction for a convicted felon for whom execution of a determinate sentence in state prison has been suspended is the "period of time in confinement or in custody . . . equal to that which he or she would have otherwise spent in state prison had sentence been executed, including application of good behavior and participation credit provisions of" Penal Code section 2931. It has been construed, as it were, to grant a convicted felon so committed to the center, whether or not he remains for the maximum duration, a "contingent" entitlement to such credits—that is to say, it entitles him to the credits that he would have earned if he had instead served a determinate sentence in state prison. (See, e.g., *In re Huffman* (1986) 42 Cal.3d 552, 559 [229 Cal.Rptr. 789, 724 P.2d 475].) █ As its words themselves declare, its purpose is to equalize, at least insofar as these credits are concerned, the maximum duration of an involuntary civil commitment and the maximum term of an executed determinate sentence—in order, apparently, to avoid the deterrence to rehabilitation that would exist if these credits were available in prison but not at the center (e.g., *People* v. *Williams* (1991) 232 Cal.App.3d 1643, 1646, 1648 [284 Cal.Rptr. 241]; *In re Jiminez* (1985) 166 Cal.App.3d 686, 692 -693[212 Cal.Rptr. 550]).

Penal Code section 2931 was amended in 1982 through the addition thereto of subdivision (d), which states that "[t]his section"—with its good behavior and participation credits—"shall not apply to any person whose crime was committed on or after January 1, 1983."

█ It is plain to us that the Court of Appeal did not err by upholding the superior court's denial of credits to defendant under Welfare and Institutions Code section 3201, subdivision (c), for good behavior and participation pursuant to Penal Code section 2931 on the ground that these credits were not available, by operation of subdivision (d) of the latter provision, because he had perpetrated his offense after January 1, 1983. Welfare and Institutions Code section 3201, subdivision (c), entitled him to the good behavior and participation credits that he would have earned pursuant to Penal Code section 2931 if he had served a determinate sentence in state prison instead of receiving an involuntary civil commitment to the California Rehabilitation Center for narcotics addiction. Pursuant to Penal Code section

---

[1]Defendant requests us to take judicial notice of matter reflected in the Enrolled Bill Report of the California Youth and Adult Correctional Agency of the California Department of Corrections on Senate Bill No. 1878, 1979-1980 Regular Session—the measure that added subdivision (c) to Welfare and Institutions Code section 3201. We hereby do so. (See Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

2931, however, he could have earned no such credits. That is because, under subdivision (d) thereof, credits of this sort were not available inasmuch as he perpetrated his offense after January 1, 1983.[2]

In arguing to the contrary, defendant interprets Welfare and Institutions Code section 3201, subdivision (c), to grant a convicted felon who receives an involuntary civil commitment to the California Rehabilitation Center for narcotic addiction an "absolute" entitlement to the good behavior and participation credits of Penal Code section 2931, i.e., it entitles him to earn these credits whether or not he could have done so if he had instead served a determinate sentence in state prison and as a result had been directly subject to the limitation of subdivision (d) of the latter provision to offenses perpetrated before January 1, 1983.

■ Defendant relies on the canon of statutory construction that " 'where a statute adopts by specific reference the provisions of another statute, . . . such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary.' " (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1].) ■ But the fact is, Welfare and Institutions Code section 3201, subdivision (c), does not adopt Penal Code section 2931 by specific reference. Rather, Welfare and Institutions Code section 3201, subdivision (c), merely states that a convicted felon who receives an involuntary civil commitment to the California Rehabilitation Center for narcotic addiction is entitled to the good behavior and participation credits that he would have earned pursuant to Penal Code section 2931 if he had instead served a determinate sentence in state prison. As explained, a convicted felon, like defendant, who perpetrated his offense on or after January 1, 1983, could have earned no such credits by reason of subdivision (d) of the latter provision. To be sure, Welfare and Institutions Code section 3201, subdivision (c), cites Penal Code section 2931 all but expressly. But that does not effect adoption by specific reference. (See

---

[2]Not to the contrary are *People* v. *Miller* (1991) 233 Cal.App.3d 1551 [285 Cal.Rptr. 410], *People* v. *Williams, supra,* 232 Cal.App.3d 1643, *In re Jiminez, supra,* 166 Cal.App.3d 686, and *In re Mabie* (1984) 159 Cal.App.3d 301 [205 Cal.Rptr. 528]. None of these cases even considers such propositions as whether Welfare and Institutions Code section 3201, subdivision (c), entitles a convicted felon who receives an involuntary civil commitment to the California Rehabilitation Center for narcotic addiction for an offense perpetrated on or after January 1, 1983, to earn the good behavior and participation credits of Penal Code section 2931. "It is axiomatic," of course, "that cases are not authority for propositions not considered." (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].)

generally, *In re Jovan B.* (1993) 6 Cal.4th 801, 815-820 [25 Cal.Rptr.2d 428, 863 P.2d 673].)[3]

Defendant next relies on the "equality" and "deterrence-avoidance" purpose of Welfare and Institutions Code section 3201, subdivision (c). That purpose, however, is satisfied most closely by our construction, not his. Our reading ensures that the maximum duration of a convicted felon's involuntary civil commitment to the California Rehabilitation Center for narcotics addiction and the maximum term in state prison under a determinate sentence had such sentence in fact been executed are equal, and that deterrence to rehabilitation is avoided, at least insofar as the good behavior and participation credits of Penal Code section 2931 are concerned, no matter when he perpetrated his offense. If before January 1, 1983, he would earn at the center the credits he would have earned in prison. If on or after that date, he could not earn at the center the credits he could not have earned in prison. In neither case would he be subject to any deterrence against rehabilitation arising from the availability of the credits in prison but not at the center. Defendant's interpretation, by contrast, would go beyond ensuring equality and deterrence-avoidance insofar as these credits are concerned: If the convicted felon perpetrated his offense on or after January 1, 1983, he could earn at the center credits he could not have earned in prison, and would receive what defendant deems an "incentive" to rehabilitation. Such additional credits and any resulting incentive may perhaps constitute sound policy. (See *In re Jiminez, supra,* 166 Cal.App.3d at p. 692.) But it is for the Legislature to give and not this court.

Defendant also relies on Penal Code section 2933. At the time that Penal Code section 2931 was amended into its present form in 1982 with the limitation of subdivision (d) to offenses perpetrated before January 1, 1983, Penal Code section 2933 was added to authorize the Director of Corrections,

---

[3]*In re Oluwa* (1989) 207 Cal.App.3d 439 [255 Cal.Rptr. 35], on which defendant relies, is distinguishable. It deals with Penal Code section 190, which, although similar in language to Welfare and Institutions Code section 3201, subdivision (c), is nevertheless different from it in substance. (See *People* v. *Eddy* (1995) 32 Cal.App.4th 1098, 1106 [38 Cal.Rptr.2d 563].) As explained in the text, Welfare and Institutions Code section 3201, subdivision (c), entitles a convicted felon who receives an involuntary civil commitment to the California Rehabilitation Center for narcotic addiction to the good behavior and participation credits that he would have earned pursuant to Penal Code section 2931 if he had instead served a determinate sentence in state prison and as a result had been directly subject to the limitation of subdivision (d) of the latter provision to offenses perpetrated before January 1, 1983. By contrast, Penal Code section 190 entitles a convicted felon who is serving an indeterminate sentence in state prison of 25 years to life for first degree murder, or 15 or 20 years to life for second degree murder, to earn good behavior and participation credits pursuant to Penal Code section 2931, but without such a condition. (See *In re Oluwa, supra,* 207 Cal.App.3d at pp. 444-446.)

as pertinent here, to provide worktime credits on a one-for-one basis, and worktime-related credits on a one-for-two basis, in the period commencing with that date. Defendant argues that it is "illogical to presume" that the Legislature intended to "dramatically lengthen" involuntary civil commitments to the California Rehabilitation Center for narcotics addiction "while dramatically shortening" determinate sentences in state prison only two years after it added subdivision (c) to Welfare and Institutions Code section 3201 in order to equalize, at least insofar as the good behavior and participation credits of Penal Code section 2931 are concerned, the maximum duration of an involuntary civil commitment and the maximum term of a determinate sentence had such sentence in fact been executed. Contrary to defendant's implication, any such simultaneous "lengthening" of involuntary civil commitments and "shortening" of determinate sentences would not be attributable to our construction of Welfare and Institutions Code section 3201, subdivision (c). Rather, it would result, in pertinent part, from a restriction of worktime and worktime-related credits to convicted felons serving a determinate sentence (see *People* v. *Eddy, supra,* 32 Cal.App.4th at pp. 1106-1110; *People* v. *Madison, supra,* 17 Cal.App.4th at pp. 787-789; *People* v. *Abdullah* (1992) 6 Cal.App.4th 1728, 1733-1734 [9 Cal.Rptr.2d 131]; *People* v. *Miller, supra,* 233 Cal.App.3d at pp. 1553-1556; *People* v. *Williams, supra,* 232 Cal.App.3d at pp. 1646-1649; *In re Mabie, supra,* 159 Cal.App.3d at pp. 305-309; cf. Pen. Code, § 2933, subd. (a) [effectively granting an entitlement to worktime-related credits on a one-for-two basis to convicted felons serving a determinate sentence in state prison who are willing, but not able, to participate in a qualifying worktime assignment]; Cal. Code Regs., tit. 15, § 3044, subd. (b)(2) [similar]; *id.,* tit. 15, § 3044, subd. (b)(5) [similar]; *id.,* tit. 15, § 3044, subd. (b)(7) [similar])—a restriction that he does not dispute.

Finally, we note that, in the course of his argument, defendant asserts that *Madison* was wrongly decided. We disagree. Its reasoning, which is consistent with our analysis, is sound. Its result, which is identical to our conclusion, is correct.[4]

### III

For the reasons stated above, we conclude that the judgment of the Court of Appeal must be affirmed.

It is so ordered.

Lucas, C. J., Arabian, J., Baxter, J., and George, J., concurred.

---

[4]In his reply brief, defendant asserts that *People* v. *Eddy, supra,* 32 Cal.App.4th at pages 1105 to 1106, which generally follows *Madison,* was itself wrongly decided. Above, we rejected his attack on *Madison.* Here, we reject his attack on *Eddy.*

**KENNARD, J.,** Dissenting.—Under Welfare and Institutions Code section 3201, subdivision (c), a convicted felon committed to the California Rehabilitation Center (CRC) for treatment because of actual or potential drug addiction may be confined for no longer than "a period of time . . . equal to that which he or she would have otherwise spent in state prison had sentence been executed, including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code . . . ."

In 1980, when subdivision (c) was first added to Welfare and Institutions Code section 3201, Penal Code section 2931 provided that felons sentenced to the state prison could claim, for every two days spent in custody, one day of credit for good behavior and participation in certain prison programs (hereafter good behavior and participation credits). At that time, such credits were also available to felons who, because of drug addiction, were committed to CRC. (Welf. & Inst. Code, § 3201, subd. (c).) Later, however, the Legislature amended Penal Code section 2931 to make its provisions inapplicable "to any person whose crime was committed on or after January 1, 1983." (Stats. 1982, ch. 1234, § 2, p. 4549.) This amendment, the majority concludes, precludes post-1982 CRC inmates from claiming the good behavior and participation credits of Penal Code section 2931.

I disagree. I share the view of Justice Werdegar, as expressed in her dissenting opinion, that Welfare and Institutions Code section 3201, subdivision (c) specifically incorporates Penal Code section 2931 *as it existed in 1980*, when subdivision (c) was added to Welfare and Institutions Code section 3201. At that time, the 1982 amendment to Penal Code section 2931 now relied on by the majority did not exist, and therefore is of no effect.

I write separately to point out that even if the majority were correct in concluding that because of the Legislature's 1982 amendment to Penal Code section 2931, this statute's good behavior and participation credits are no longer available to CRC inmates, Welfare and Institutions Code section 3201 may nevertheless entitle them to earn essentially identical credits under a related statute, Penal Code section 2933.

Before the Legislature's amendment in 1980 of Welfare and Institutions Code section 3201, subdivision (c), affording those committed to CRC the same system of credits available to prison inmates, the statutory scheme allowed prisoners, but not felons who, because of drug addiction, were committed to CRC, to receive credit for good behavior and participation

under Penal Code section 2931. In addition, the potential length of a CRC commitment exceeded the prison sentence for most drug-related offenses (CRC commitments could last up to seven years, with a possible three-year extension). Not surprisingly, many felons eligible for a commitment to CRC and its attendant drug treatment chose instead to go to prison, where they would serve shorter sentences and they could earn good behavior and participation credits, thus reducing their term of confinement. This led to a drastic decline in the number of CRC commitments. (*In re Jiminez* (1985) 166 Cal.App.3d 686, 692-693 [212 Cal.Rptr. 550]; Cal. Dept. of Corrections Task Force: Study of the Civil Addict Program in Relationship to the Determinate Sentencing Law (1979) pp. 4-6.)

To encourage drug users convicted of felonies to undergo treatment at CRC, the Legislature in 1980 amended Welfare and Institutions Code section 3201 to provide, as relevant here, that the length of a CRC commitment would be "equal to that which [the person committed] would have otherwise spent in state prison had sentence been executed, including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code" (Pen. Code, § 2931, subd. (c)); in other words, felons committed to CRC can earn the same credits available to prison inmates (*People v. Williams* (1991) 232 Cal.App.3d 1643, 1646 [284 Cal.Rptr. 241]; *In re Jiminez, supra,* 166 Cal.App.3d at p. 693; *Review of Selected California Legislation* (1980) 12 Pacific L.J. 235, 367). This provision remains in effect today.

The Legislature has, however, modified the statutory credit provisions for *prison* inmates by denying good behavior and participation credits under Penal Code section 2931 to felons who committed their crimes on or after January 1, 1983. (Pen. Code, § 2931, subd. (d).) Generally, those individuals can now earn one of two types of credits set forth in Penal Code section 2933, subdivision (a).[1] Thus, prisoners enrolled in a qualified work, training or education program receive one day of credit (often called worktime credits) for each day spent in the program. And prisoners who are willing to participate in a qualified program, but who are not assigned to one, "shall receive no less credit than is provided under [Penal Code] Section 2931" (Pen. Code, § 2933, subd. (a)), meaning that a state prisoner who is willing to participate in a credit-qualifying assignment, but who is not so assigned,

---

[1]The Legislature has recently provided that inmates convicted of certain serious felonies can earn only a greatly reduced amount of credit (Pen. Code, § 2933.1), and that those who commit other particularly violent crimes are not entitled to any credits (Pen. Code, § 2933.5). Almost all of such felons would be ineligible for commitment to CRC. (See Welf. & Inst. Code, § 3052.) I do not address the question of whether such felons, in the unlikely event of CRC commitment, could earn credits under Penal Code section 2933.

is entitled to one day of credit for every two days spent in custody, the measure of credits "provided under Penal Code Section 2931."[2]

The pertinent question here is this: Under Welfare and Institutions Code section 3201, subdivision (c), can a felon committed to CRC earn either of the two types of credits—worktime credits and "one-for-two credits"— available to prison inmates through Penal Code section 2933? In my view, although CRC inmates do not qualify for *worktime* credits under the present statutory scheme, they can receive one-for-two credits under Penal Code section 2933.

As I noted at the outset, subdivision (c) of Welfare and Institutions Code section 3201 requires, for purposes of determining credits, that a felon committed to CRC be treated the same as if incarcerated in the state prison. Thus, we must consider the credits available to prisoners. A prisoner willing to participate in a qualifying assignment but not assigned to a program earns one-for-two credits. (Pen. Code, § 2933, subd. (a).) Consequently, to put CRC inmates on the same footing as prison inmates, as called for by subdivision (c) of Welfare and Institutions Code section 3201, CRC inmates are entitled to earn the same one-for-two credits available to prison inmates.

This conclusion effectuates the purpose of Welfare and Institutions Code section 3201, subdivision (c), by encouraging those who are convicted of felonies and are actual or potential drug addicts to accept a CRC commitment. To withhold the one-for-two credits from those committed to CRC would discourage prisoners from accepting CRC commitments and would treat CRC inmates unequally compared to prison inmates.

Moreover, this conclusion avoids rendering portions of Welfare and Institutions Code section 3201, subdivision (c) meaningless. That provision states that the maximum length of confinement must include the "good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code . . . ." In couching the statutory provision in these words, the Legislature must have intended to provide CRC inmates with some sort of credits. As I discussed earlier, the only potentially applicable types of credits contained in article 2.5 are those in Penal Code sections 2931 and 2933. According to the majority, CRC inmates are not entitled to any credits under section 2931. That leaves us with Penal Code section 2933. If CRC inmates were denied

---

[2]Although these credits are identical to the good behavior and participation credits authorized in Penal Code section 2931, Penal Code section 2933 does not label them, instead referring to them simply as "credits." For convenience, I refer to them as "one-for-two credits," because, like the credits awarded under Penal Code section 2931, there is one day of credit for every two days of incarceration.

the one-for-two credits of Penal Code section 2933, the pertinent language of Welfare and Institutions Code section 3201, subdivision (c), which states that the maximum length of confinement must include the "good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code" would be reduced to irrelevant surplusage. " ' "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." . . . "[A] construction making some words surplusage is to be avoided." ' " (*Woosley* v. *State of California* (1992) 3 Cal.4th 758, 775-776 [13 Cal.Rptr.2d 30, 838 P.2d 758], citation omitted.)

For the reasons I have articulated, I would reverse the judgment of the Court of Appeal.

**WERDEGAR, J.**—I respectfully dissent.

The majority, in its narrow and hypertechnical reading of a single subdivision of one statute (subd. (d) of Pen. Code, § 2931),[1] ignores, and thereby defeats, the clear legislative intent of all the statutes here at issue. The goal of Welfare and Institutions Code section 3201, subdivision (c), in applying good behavior and participation credits to a commitment to the California Rehabilitation Center (CRC), is to provide an incentive for addicts convicted of felonies to receive treatment at the CRC by making commitment terms more equal to those served in state prison under the Uniform Determinate Sentencing Act of 1976. (See Com. on Criminal Justice, Analysis of Sen. Bill No. 1878 (1979-1980 Reg. Sess.) as amended June 9, 1980.) The goal of section 2931, subdivision (d) and section 2933, enacted together two years after Welfare and Institutions Code section 3201, subdivision (c), in making worktime credits the primary time credit available to prisoners serving determinate sentences, is to give such prisoners a strong incentive to participate in work programs. (See Legis. Analyst, Analysis of Assem. Bill No. 2954 (1981-1982 Reg. Sess.) as amended May 20, 1982.)[2]

By finding that section 2931, subdivision (d) precludes application of *any* credits to limit the length of a CRC commitment, the majority effectively renders Welfare and Institutions Code section 3201, subdivision (c) a nullity and disregards the import of sections 2931, subdivision (d) and 2933. As the author of the majority opinion has, in another context, aptly stated: "[T]he

---

[1]Penal Code section 2931, subdivision (d) states: "This section shall not apply to any person whose crime was committed on or after January 1, 1983." Unless otherwise noted, all statutory references are to the Penal Code.

[2]The term "conduct credit" is used to refer to the "good behavior and participation" credit established under section 2931; "worktime" refers to the credit system established under section 2933.

purpose of statutory construction is not merely to declare the plain meaning of the words used; the purpose is to understand the intent of the lawmakers, and the goal of that inquiry, in turn, is to give maximum effect to that intent." (*Rossi* v. *Brown* (1995) 9 Cal.4th 688, 716 [38 Cal.Rptr.2d 363, 889 P.2d 557] (dis. opn. of Mosk, J.).) Consistent with the intent of the lawmakers in enacting the statutes here at issue, I would find defendant entitled to 191 days of conduct credit, applied to his state prison term, for the time he was confined pursuant to a commitment to CRC.[3]

In my view, because Welfare and Institutions Code, section 3201, subdivision (c), enacted in 1980, adopts section 2931 by specific reference, the provisions of section 2931 " 'are incorporated in the form in which they exist[ed] at the time of the reference and not as subsequently modified, and . . . the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary. [Citations.]' " (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1].) Subdivision (d) of section 2931, enacted two years later, in 1982, would therefore have no effect on the availability of conduct credits to limit the maximum confinement on a CRC commitment.

The majority errs by finding no incorporation by specific reference. (Maj. opn., *ante,* at p. 123.) According to the majority, the language of Welfare and Institutions Code section 3021, subdivision (c), the incorporating statute, grants a convicted felon committed to CRC only those credits he would have earned pursuant to section 2931 if he had instead served a determinate sentence in state prison; the statute, the majority argues, thus does not entitle a person committed to CRC whose crime occurred on or after January 1, 1983, the effective date of section 2931, subdivision (d), to conduct credits no longer generally available to felons serving determinate terms in state

---

[3]The majority states: "After [defendant] had spent apparently 382 days at the center, he was excluded as unsuitable." (Maj. opn., *ante,* at p. 121.) This is somewhat misleading. Defendant, committed on December 23, 1991, successfully *completed* his initial commitment to CRC and was released on parole in September of 1992. After failing to keep parole appointments, he was arrested in January of 1993 and returned to CRC. He was then found unsuitable for treatment, criminal proceedings were reinstated, and he was eventually committed to state prison.

Prior cases have consistently granted conduct credits to persons committed to CRC, regardless of whether they remained there for the commitment's maximum duration or were returned to state prison. (*In re Huffman* (1986) 42 Cal.3d 552, 559 [229 Cal.Rptr. 789, 724 P.2d 475]; *People* v. *Madison* (1993) 17 Cal.App.4th 783, 788 [22 Cal.Rptr.2d 157]; *In re Jiminez* (1985) 166 Cal.App.3d 686, 691 [212 Cal.Rptr. 550]; *People* v. *Talton* (1983) 145 Cal.App.3d 729, 730-731 [193 Cal.Rptr. 660] (*per curiam*); *People* v. *Mobley* (1983) 139 Cal.App.3d 320, 323-324 [188 Cal.Rptr. 583] (*per curiam*); *People* v. *Hankins* (1982) 137 Cal.App.3d 694, 696-700 [187 Cal.Rptr. 210]; *In re Martin* (1981) 125 Cal.App.3d 896, 898-903 [178 Cal.Rptr. 445]; see also *People* v. *Miller* (1991) 233 Cal.App.3d 1551, 1553 [285 Cal.Rptr. 410].)

prison. I find this conclusion unpersuasive because the majority fails to analyze this case in terms of well-established principles of statutory construction relating to incorporation of statutes. (See *In re Jovan B.* (1993) 6 Cal.4th 801, 816-820 [25 Cal.Rptr.2d 428, 863 P.2d 673]; *People* v. *Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1176, fn. 7 [17 Cal.Rptr.2d 815, 847 P.2d 1031]; *People* v. *Kirk* (1990) 217 Cal.App.3d 1488, 1498-1500 [267 Cal.Rptr. 126]; *People* v. *Domagalski* (1989) 214 Cal.App.3d 1380, 1386 [263 Cal.Rptr. 249]; *In re Oluwa* (1989) 207 Cal.App.3d 439, 445 [255 Cal.Rptr. 35].)

In *In re Oluwa, supra,* 207 Cal.App.3d 439, the Court of Appeal interpreted section 190, which then provided in pertinent part: " '*The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code [article 2.5]* shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to this section . . . .' " (*In re Oluwa, supra,* 207 Cal.App.3d at p. 442, italics added.) The Court of Appeal found section 190 specifically incorporated section 2931 as it existed when 190 was enacted, and not as later amended by the addition of subdivision (d) and section 2933: "This is not a reference to a system or body of laws or to the general law relating to the subject at hand. It is a *specific and pointed reference* to an article of the Penal Code which contained only sections 2930, 2931, and 2932 at the time Proposition 7 incorporated article 2.5 into section 190." (*In re Oluwa, supra,* 207 Cal.App.3d at p. 445, italics added.)[4]

The language interpreted in *Oluwa* is identical in effect to the language of section 3201, subdivision (c) of the Welfare and Institutions Code, which provides that any person committed to CRC for treatment shall be released on parole when he or she has been in custody for a period of time "equal to that which he or she would have otherwise spent in state prison had sentence been executed, *including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code . . . .*" (Italics added.) The majority fails to explain how this language, with its specific and pointed reference to application of the "good behavior and participation credit provisions of Article 2.5 [etc.]," differs in substance from the language of section 190 that the *Oluwa* court found incorporated by specific reference section 2931 as it existed at the time of the incorporation.

---

[4]In 1988 the Legislature amended section 2933 to provide that subdivision (d) of section 2931 does *not* apply to persons sentenced under section 190. The *Oluwa* court cited this emergency amendment to support its holding that section 190, *prior* to this amendment, specifically incorporated section 2931, and as an additional argument against the defendant's claim to worktime credits under section 2933. (*In re Oluwa, supra,* 207 Cal.App.3d at p. 447.) Thus, the majority's attempt to distinguish *Oluwa* from this case fails. (Maj. opn., *ante,* at p. 130, fn. 3.)

Modern decisions finding incorporation by specific reference, including *In re Oluwa, supra*, 207 Cal.App.3d 439, have looked not only to the words of the adopting statute, but also to indicia of legislative intent.[5] " 'A close reading of *Palermo* [*supra*, 32 Cal.2d at pp. 58-59] and the cases cited therein . . . makes it clear that in cases where it is questionable whether only the original language of a statute is to be incorporated or whether the statutory scheme, along with subsequent modifications, is to be incorporated, the determining factor will be the legislative intent behind the incorporating statute.' " (*People* v. *Domagalski, supra*, 214 Cal.App.3d at p. 1386.) The majority apparently agrees with this principle, but, in disregarding legislative intent, fails to apply it and declines to find incorporation by specific reference. (Maj. opn., *ante*, at p. 124, citing *In re Jovan B., supra*, 6 Cal.4th at pp. 815-820.)

In the instant case, the history of the incorporating statute, Welfare and Institutions Code section 3201, subdivision (c), evinces a legislative intent to provide persons committed to CRC with the opportunity to reduce their total confinement by earning the good behavior and participation credits then available under section 2931 to state prisoners. (See Cal. Youth and Adult Correctional Agency, Cal. Dept. of Corrections, Enrolled Bill Rep., Sen. Bill No. 1878 (1979-1980 Reg. Sess.) July 15, 1980.)[6] "The amendment to section 3201 additionally reflects the Legislature's continuing recognition that the availability of conduct credits to inmates is an important ingredient of the rehabilitative process." (*In re Jiminez, supra*, 166 Cal.App.3d at p. 693.) The good behavior and participation credits described in Welfare and Institutions Code section 3201, subdivision (c) are well suited to the rehabilitative focus of a CRC commitment: "The principal goal of CRC confinement is elimination of drug dependency. This problem, which has both physiological and psychological roots, may well respond to a credit incentive to obey institutional rules, which will include abstinence from addicting

---

[5] In older cases, the rule was that "[a] statute of specific reference, as its name implies, refers specifically to a particular statute by its title or section number. A general reference statute refers to the law on the subject generally. An example of this type of reference is a provision that contracts made under the statute are to be made 'in the manner now provided by law.' " (2B Sutherland, Statutes and Statutory Construction (5th ed. 1992) § 51.07, pp. 189-190, fns. omitted.)

[6] Following enactment of the Determinate Sentencing Act, the number of persons committed to CRC sharply declined because convicted felons, otherwise eligible for treatment, chose instead to go to prison where they could earn conduct credit and serve a shorter term in custody. (Cal. Youth and Adult Correctional Agency, Cal. Dept. of Corrections, Enrolled Bill Rep., Sen. Bill No. 1878 (1979-1980 Reg. Sess.) July 15, 1980.) "The 1980 amendment to Welfare and Institutions Code section 3201 was enacted with the intent of reducing the CRC term so that the term for a felon at CRC would be equivalent to his term in state prison." (*In re Jiminez, supra*, 166 Cal.App.3d at p. 693, citing *Review of Selected California Legislation* (1980) 12 Pacific L.J. 366, 367.)

drugs." (*In re Huffman, supra*, 42 Cal.3d at p. 562, fn. 9.) The availability of conduct credits encourages participation in the program, serves as an incentive for cooperation and success in the program, and thus aids the CRC goal of rehabilitation. (See *People* v. *Hankins, supra*, 137 Cal.App.3d at p. 698; *In re Jiminez, supra*, 166 Cal.App.3d at p. 692.)[7]

Implicit in the majority's decision is the view that the Legislature, less than two years after Welfare and Institutions Code section 3201, subdivision (c) went into effect (on July 29, 1980), abandoned its previously stated intent to revitalize the civil addict program and to equalize CRC confinement with determinate state prison terms so that felon addicts suited to commitment at CRC would seek treatment. But the legislative history of section 2933 and subdivision (d) of section 2931 indicates that in adopting those provisions the Legislature was concerned only with *prisoners* serving determinate terms in state prison and not with revising the credit scheme for other commitments. (Legis. Analyst, Analysis of Assem. Bill No. 2954 (1981-1982 Reg. Sess.) as amended May 20, 1982, § 9, p. 3.) In restructuring the credit system for state prisoners, the Legislature, significantly, did *not* amend Welfare and Institutions Code section 3201, subdivision (c) to eliminate the good behavior and participation credits it had only two years before specifically granted therein. " '[F]ailure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect.' " (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137].) The majority pays lip service to the Legislature's primacy in making policy determinations (maj. opn., *ante*, at pp. 124-125), but interprets the statutes at issue without regard to the lawmakers' intent.

The majority maintains its construction of Welfare and Institutions Code section 3201, subdivision (c) most closely satisfies that statute's "deterrence-avoidance" purpose and ensures "equality," because it assures that the maximum duration of a convicted felon's commitment to the CRC is equal to the maximum term he would have served under a determinate sentence in prison; it thus avoids deterrence to rehabilitation, the majority asserts, no

---

[7]There is also a strong legislative policy in favor of commitments to CRC. Section 3000 of the Welfare and Institutions Code provides: "It is the intent of the Legislature that persons addicted to narcotics, or who by reason of repeated use of narcotics are in imminent danger of becoming addicted, shall be treated for such condition and its underlying causes, and that such treatment shall be carried out for nonpunitive purposes not only for the protection of the addict, or person in imminent danger of addiction, against himself, but also for the prevention of contamination of others and the protection of the public. . . ." (Welf. & Inst. Code, § 3000; see also *People* v. *Navarro* (1972) 7 Cal.3d 248, 264 [102 Cal.Rptr. 137, 497 P.2d 481].)

matter when the felon committed his offense. (Maj. opn., *ante*, at p. 124.) This argument is specious and ignores reality. Persons sentenced to state prison whose crimes occurred on or after January 1, 1983, can receive the *more generous* one-for-one worktime credits provided under section 2933. Moreover, for prisoners who are unable, for one reason or another, to participate in work programs, and for those who enroll in a two-year or four-year college program leading to a degree, conduct credits equal to those provided in section 2931 remain a *minimum* credit level available to reduce the length of their sentences. (§ 2933, subd. (a).)[8] In thus continuing to afford certain prisoners credits under section 2931, section 2933 itself specifically incorporates the credit provisions of that statute without concern for the limiting language of subdivision (d) of section 2931. (§ 2933, subd. (a); see also § 1364 [granting section 2931 credits to certain sex offenders without reference to subdivision (d)].)

Although the majority acknowledges the continued applicability of section 2931 credits in some of the above mentioned circumstances, notwithstanding subdivision (d), the majority fails to explain its inconsistency in denying these same credits to CRC residents whose offenses occurred on or after January 1, 1983, except to claim that any "lengthening" of CRC commitments and "shortening" of determinate sentences is attributable, not to its construction of Welfare and Institutions Code section 3201, subdivision (c), but, rather, to the Legislature's restriction of worktime credits to convicted felons serving a determinate sentence. (Maj. opn., *ante*, at p. 125.)

In enacting section 2933 without a conforming amendment to Welfare and Institutions Code section 3201, subdivision (c), the Legislature apparently determined not to reduce the terms of persons committed to CRC by the more generous one-for-one worktime credits so as to make CRC commitments completely equivalent to the terms such persons would have served in state prison. "Undoubtedly, the Legislature wished to remove the 'penalty' that was previously attached to CRC commitments before the 1980 changes. However, that one change does not indicate that CRC and prison commitments are to be hereafter treated equally." (*People* v. *Williams* (1991) 232 Cal.App.3d 1643, 1648 [284 Cal.Rptr. 241].) Notwithstanding the discrepancy in applicable credits thereby created, the stated goal of Welfare and

---

[8]State prisoners can earn section 2931 credits under a wide variety of circumstances. For example, state prisoners whose offenses were committed on or after January 1, 1983, can receive conduct credits if they are waiting for an adverse transfer to another institution (Cal. Code Regs., tit. 15, § 3044, subd. (b)(2)(B)), if they are housed in indeterminate lockup status such as those confined to administrative segregation or to the security housing unit (Cal. Code Regs., tit. 15, § 3044, subd. (b)(5)(A) and (B)), if they are undergoing processing at a reception center (Cal. Code Regs., tit. 15, § 3044, subd. (b)(7), or if they are serving indeterminate terms (Cal. Code Regs., tit. 15, § 3043, subds. (a)(1) and (b)).

Institutions Code section 3201, subdivision (c) nevertheless remains un-changed: to make the length of a civil addict commitment "compatible with the prison sentence." (Cal. Youth and Adult Correctional Agency, Cal. Dept. of Corrections, Enrolled Bill Rep., Sen. Bill No. 1878 (1979-1980 Reg. Sess.) July 15, 1981.)

Contrary to the majority's view, because most state prisoners can receive the more generous one-for-one credits provided by section 2933 and others will continue to receive the one-for-two credits provided by section 2931, inequality results *not* from denying persons committed to CRC the section 2933 credits, but from denying them good behavior and participation cred-its—the credits they are expressly granted by Welfare and Institutions Code section 3201, subdivision (c).

The majority rejects defendant's reliance on cases prior to *People* v. *Madison, supra,* 17 Cal.App.4th 783, to demonstrate CRC inmates' entitle-ment to good behavior and participation credits. (*People* v. *Miller, supra,* 233 Cal.App.3d 1551; *People* v. *Williams, supra,* 232 Cal.App.3d 1643; *In re Jiminez, supra,* 166 Cal.App.3d 686; and *In re Mabie* (1984) 159 Cal.App.3d 301 [205 Cal.Rptr. 528]. (Maj. opn., *ante,* at p. 123, fn. 2.) These decisions, it is true, *assumed* application of good behavior and participation credits to limit confinement on a CRC commitment without specifically addressing the question. But, except for *Madison, supra* (and *People* v. *Eddy* (1995) 32 Cal.App.4th 1098 [38 Cal.Rptr.2d 563], which merely cited *Madison*), the assumption, significantly, has been uniformly accepted: long after enactment of section 2931, subdivision (d), the courts and the Department of Correc-tions have both continued routinely to apply good behavior and participation credits to limit the length of a CRC commitment. Indeed, the Department of Corrections' current regulations specifically provide for such credits in determining CRC inmates' terms of confinement and parole eligibility dates, pursuant to Welfare and Institutions Code section 3201, subdivision (c).[9] "Long-continued contemporaneous and practical interpretation of a statute

[9](1) "Civil Addict Discharge Time Computation[:] Early discharge and maximum civil addict terms are indicated by the following chart: . . . [¶] . . . [¶] *Max[imum] Allowable Time in Custody [for] Felon Term 24 Mo[nths] or less[, section] 3051 W[elfare] & I[nstitutions Code,] [is] 2/3 Term[, Welf. & Inst. Code, §] 3201 [subdivision] c . . . [; for] Felon Term More Than 24 Mo[nths][, section] 3051 W[elfare] & I[nstitutions Code,] [is] 2/3 Term[, Welf & Inst. Code, §] 3201 [subdivision] c."* (Cal. Dept. of Corrections Operations Manual (Dec. 29, 1989) ch. 80000, subch. 82000, § 82060.6, p. 82060-15, fn. omitted, italics added); and (2) "Upon Reaching Custody Expiration Date: An outpatient in this category who has spent a period of confinement or in custody, excluding any time spent on outpatient status, equal to that which he or she would have otherwise spent in State Prison had sentence been executed, *including application of good behavior and participation credit (1/3 off term),* shall, upon reaching such accumulation of time, be returned to the court of commitment by the Director of Corrections in accordance with Section 3201 [subd.] (c) of the W[elfare] & I[nstitutions]

by the executive officers charged with its administration and enforcement, the courts, and the public constitutes an invaluable aid in determining the meaning of a doubtful statute. . . . [¶] This rule of construction is closely related to the doctrine that statutes will be given their common and ordinary meaning, but such meaning must be justified through resort to extrinsic sources which relate to the operation of the statute in actual practice." (2B Sutherland, Statutes and Statutory Construction, *supra*, § 49.03, p. 7, fns. omitted.)

Fifteen years after enactment of Welfare and Institutions Code section 3201, subdivision (c), and thirteen years after amendment of section 2931 and enactment of section 2933, the majority chooses to ignore the intent underlying these provisions and their consistent administrative application to accept, instead, the conclusion of a single Court of Appeal that made its determination without analysis, in the context of a case that raised the entirely different issue of whether a defendant committed to CRC is entitled to section 2933 one-for-one worktime credits. (*People* v. *Madison, supra*, 17 Cal.App.4th 783.) Because both parties in *Madison* "acknowledge[d]" section 2931 did not apply (17 Cal.App.4th p. 787), the court presumably did not have occasion to consider the question critically.[10] By reading the "plain meaning" of section 2931, subdivision (d) to preclude any true equalization between the maximum length of confinement in CRC for treatment of an addicted felon and the length of incarceration such a felon would serve under a determinate term in state prison, the majority sacrifices the "manifest reason and obvious purpose" of Welfare and Institutions Code section 3201, subdivision (c) to "a literal interpretation" of the words of section 2931, subdivision (d). (*Rossi* v. *Brown, supra*, 9 Cal.4th at p. 717 (dis. opn. of Mosk, J.), quoting *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883].)

The majority can point to no indicia of legislative intent to support the view that the Legislature, by amending section 2931 and enacting section 2933, intended to grant *more* credits to most state prisoners, whose incarceration is solely for the purpose of punishment (§ 1170, subd. (a)(1)), while eliminating *all* credits granted to CRC inmates, whose incarceration is primarily for the purpose of rehabilitation (Welf. & Inst. Code, § 3000). "[A]lthough our inquiry begins with the words used by the lawmakers, it does not necessarily end by giving those words their plain or literal meaning. Rather, 'the "plain meaning" rule does not prohibit a court from determining

Code." (*Id.* (Aug. 23, 1989), ch. 80000, subch. 82000, § 82060.5 at p. 82060-14, italics added.)

[10]The Attorney General, I note, originally took the position the defendant *was* entitled to good behavior and participation credits and only "acknowledge[d]" otherwise after the court requested further briefing. (*People* v. *Madison, supra*, 17 Cal.App.4th at p. 787.)

whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. . . . Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.'" (*Rossi* v. *Brown, supra,* 9 Cal.4th at p. 717 (dis. opn. of Mosk, J.), quoting *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Consistent with established principles of statutory interpretation, any apparent inconsistency between the language of section 2931, subdivision (d) and the language of Welfare and Institutions Code section 3201, subdivision (c), should be resolved by giving the latter a "'reasonable and common sense construction in accordance with its apparent purpose and the intent of the Legislature.'" (*People* v. *Kirk, supra,* 217 Cal.App.3d at p. 1499, quoting *People* v. *Fields* (1980) 105 Cal.App.3d 341, 343-344 [164 Cal.Rptr. 336].)

For the above reasons, I would reverse the judgment of the Court of Appeal.