Filed 10/3/13  P. v. Contreras CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047098 |
| v. | (Super. Ct. No. 08CF2706) |
| MANUEL MARTINEZ CONTRERAS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Carla Singer, Judge.  Affirmed.

Susan D. Shors, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

Defendant Manuel Martinez Contreras appeals from the judgment entered after a jury found him guilty of committing a lewd act upon a child under 14 years old, misdemeanor assault and battery, and kidnapping. The jury found true the enhancement allegation that Contreras kidnapped his victim to commit a lewd act upon her. Contreras argues the trial court erred by refusing to instruct the jury with a special instruction on third party culpability. Contreras also argues the trial court erroneously stated that he is likely ineligible for postsentence prison conduct credit as to the imposed indeterminate 15-year-to-life sentence.

We affirm. Even if we were to assume the trial court erred by refusing to instruct the jury with the special instruction on third party culpability, any such error was harmless. Furthermore, the trial court's stray comment regarding the unlikelihood of the Department of Corrections and Rehabilitation awarding Contreras postsentence conduct credit did not constitute error.

FACTS

Around 8:20 p.m. on September 14, 2008, five-year-old A.F. and her seven-year-old brother (collectively, the children) were playing with a bike in a grass alley in their apartment complex. A.F. stopped riding the bike and started talking to a man, whom she later identified to police officers as Contreras. A.F. told her brother that he could ride the bike; A.F.'s brother rode away. A.F.'s brother had seen Contreras drinking out of a beer can, earlier that night.

Contreras asked A.F. questions she could not answer. He then picked her up, carried her to a different part of the apartment complex, and put her down on the ground. Contreras pulled down A.F.'s shorts and underwear, and bit her on her "pee pee." A.F. tried to run away, but Contreras would not let her go. A.F. screamed. The

2

children's neighbor, 10-year-old A.H., was retrieving a ball, when she saw Contreras standing behind A.F. and touching A.F.'s breasts and stomach. Earlier that night, A.H. had seen Contreras drinking beer from a red beer can with a couple of his friends. A.H. ran home and told her parents what she had seen. She later told an investigator that she thought Contreras lived in a particular apartment in the apartment complex.

A.F.'s brother heard A.F. scream and, after looking for her, found her with Contreras; Contreras was kneeling down, facing A.F. When Contreras saw A.F.'s brother, Contreras got up, said A.F. had gotten lost, and ran away. A.F.'s brother saw A.F.'s shorts were unzipped and "the button taken off"; A.F. was crying.

The children's mother, L.F., heard A.F.'s scream; she met the children at a corner. A.F.'s brother screamed, "Mom[,] Mom," and A.F. cried, "a man mom. A man. A man." L.F. saw that A.F.'s shorts had the zipper down, belt unbuckled, and button undone, and her underwear was pushed down just above her genital area. L.F. also saw a red mark between A.F.'s belly button and pubic bone. L.F. called the police.

The following day, L.F. found a red beer can in an outside planter. She later gave the police the beer can she had found.

A couple days later, A.F. and A.H. identified Contreras as the perpetrator at an in-field showup. A.H. also identified Contreras at trial.

A screening of a sample taken from a swab of A.F.'s stomach showed the presence of a low level of amylase which could indicate the presence of saliva. Further testing showed the sample contained DNA matching Contreras's genetic profile. The DNA analyst testified at trial that "[t]he frequency of choosing an individual at random who could not be excluded as that major profile from the stomach swab is more rare[] than one in one trillion unrelated individuals." An unidentified male's DNA (not Contreras's DNA) was found on the beer can that L.F. had found.

3

PROCEDURAL BACKGROUND

Contreras was charged in an information with one count of committing a lewd act upon a child under 14 years old, in violation of Penal Code section 288, subdivision (a)[1] (count 1); one count of oral copulation or sexual penetration with a child of 10 years or younger, in violation of section 288.7, subdivision (b) (count 2); and kidnapping to commit a sex offense, in violation of section 209, subdivision (b)(1) (count 3). The information alleged that in the commission of count 1, Contreras kidnapped A.F., in violation of sections 207, 209, and 209.5.

The jury found Contreras guilty as to counts 1 and 3 as charged, and, as to count 2, found him guilty of the lesser included offenses of assault and battery in violation of sections 241, subdivision (a) and 243, subdivision (a), respectively. The jury also found true that Contreras kidnapped A.F. in the commission of count 1.

The trial court imposed a total prison sentence of 15 years to life. The court advised Contreras of the calculation of his presentence conduct credit and stated that, as agreed by the prosecutor and Contreras's trial counsel, Contreras would not be entitled to postsentence conduct credit. Contreras appealed.

DISCUSSION

I.

EVEN ASSUMING THE TRIAL COURT ERRED BY REFUSING TO GIVE
CONTRERAS'S SPECIAL INSTRUCTION ON THIRD PARTY CULPABILITY,
ANY SUCH ERROR WAS HARMLESS.

"'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.'" (*People v. Souza* (2012) 54 Cal.4th 90, 115.) "The trial court must

---

[1] All further statutory references are to the Penal Code.

4

give instructions on every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case. [Citation.] Evidence is 'substantial' only if a reasonable jury could find it persuasive. [Citation.] The trial court's determination of whether an instruction should be given must be made without reference to the credibility of the evidence. [Citation.] The trial court need not give instructions based solely on conjecture and speculation." (*People v. Young* (2005) 34 Cal.4th 1149, 1200.)

Contreras argues the trial court erred by denying his request that the jury be instructed with the following special instruction on third party culpability evidence: "You have heard evidence that a person other than the defendant committed the offense with which the defendant is charged. The defendant is not required to prove the other person's guilt. It is the prosecution that has the burden of proving the defendant guilty beyond a reasonable doubt. Therefore, the defendant is entitled to an acquittal if you have a reasonable doubt as to the defendant's guilt. Evidence that another person committed the charged offense may by itself leave you with a reasonable doubt as to the defendant's guilt. However, its weight and significance, if any, are matters for your determination. If after considering all of the evidence, including any evidence that another person committed the offense, you have a reasonable doubt that the defendant committed the offense, you must find the defendant not guilty."

Contreras's trial counsel argued that the special instruction should be given in light of the defense's theory that another man committed the charged offenses. That theory was based on evidence that (1) A.H. saw the man who committed the charged offenses drinking out of a red beer can before he contacted A.F., (2) L.F. found a Tecate beer can in an outside planter the following morning, and (3) DNA belonging to an unidentified male (not Contreras) was found on that beer can.

The trial court refused to give the requested special instruction, explaining on the record, as follows: "There is no authority in which the court is aware of

5

supporting this instruction in cases which, as [Contreras's counsel] identified, there is a theory that some other dude did it. [¶] Second, the instruction and the material therein is covered in all the other instructions given, including [CALCRIM Nos.] 220 and 315, reasonable doubt and eyewitness testimony. [¶] In addition, by making the law clear to the jury with our standard instructions, including how they're to consider circumstantial evidence, we are giving them the keys to say either this defendant committed the crime beyond a reasonable doubt or he did not. And if he did not, he's entitled to an acquittal. [¶] So I think it is not only inappropriate, it is duplicative and, frankly, I think it's confusing. [¶] You are not precluded in any way, shape or form, [Contreras's counsel], from arguing that we have the wrong guy at counsel table. And certainly I would not limit your argument as to the significance of the analysis of the Tecate beer can. [¶] So I think that refusal of this instruction does not amount to a limitation on counsel to present his defense and, consequently, I'm confident that without authority it should not be given."

In his opening brief, Contreras argues he "wanted to show the jury how evidence of a third party's guilt—that two eyewitnesses identified the assailant as the man who drank beer from a can left near the scene—could legally support a verdict of acquittal. This instruction would have shown the jury the legal significance of the highly relevant third party culpability evidence." Contreras also argues the trial court's refusal to give the special instruction constituted a denial of due process.

The special instruction, proffered by Contreras in this case, is similar to the instruction considered by the California Supreme Court in *People v. Earp* (1999) 20 Cal.4th 826, 887, which stated: "'Evidence has been offered that a third party is the perpetrator of the charged offense. It is not required that the defendant prove this fact beyond a reasonable doubt. In order to be entitled to a verdict of acquittal, it is only required that such evidence raise a reasonable doubt in your minds of the defendant's guilt.'" In *People v. Earp*, the Supreme Court held the trial court's refusal to give such

6

an instruction was harmless error, stating, "[e]ven assuming that this proposed instruction accurately pinpointed the defense theory, defendant suffered no prejudice from the trial court's refusal to give it. The jury was instructed under CALJIC No. 2.90 that the prosecution had to prove defendant's guilt beyond a reasonable doubt, and the jury knew from defense counsel's argument the defense theory that [a third party], not defendant, had committed the crimes. Under these circumstances, it is not reasonably probable that had the jury been given defendant's proposed pinpoint instruction, it would have come to any different conclusion in this case." (*Ibid.*)

In *People v. Hartsch* (2010) 49 Cal.4th 472, 504, the Supreme Court explained why third party culpability instructions are generally ineffective: "We have noted that similar instructions add little to the standard instruction on reasonable doubt. [Citation.] We have also held that even if such instructions properly pinpoint the theory of third party liability, their omission is not prejudicial because the reasonable doubt instructions give defendants ample opportunity to impress upon the jury that evidence of another party's liability must be considered in weighing whether the prosecution has met its burden of proof." (See *People v. Gonzales* (2012) 54 Cal.4th 1234, 1277, [holding the trial court did not err by denying defendant's request for a third party liability instruction when counsel never offered proposed language for such an instruction, but "[i]n any event," the instruction omission was harmless in light of reasonable doubt instructions given to the jury].)

In *People v. Gutierrez* (2009) 45 Cal.4th 789, 825, the Supreme Court held that although the defendant had testified others were responsible for the victim's death, any error in not giving a third party culpability instruction was harmless because "[t]he jury was instructed on reasonable doubt and burden of proof, and could have acquitted defendant had it believed defendant's testimony."

Here, even assuming the trial court erred by refusing to give the jury the special instruction, any such error would be harmless as it is not reasonably probable the

7

jury would have arrived at a different verdict had it been so instructed.  The jury was instructed on reasonable doubt and the burden of proof in the form of CALCRIM No. 220, circumstantial and direct evidence in the form of CALCRIM Nos. 223 and 224, and eyewitness identification in the form of CALCRIM No. 315.  As in *People v. Earp*, *supra*, 20 Cal.4th at page 887, the jury knew from Contreras's trial counsel's closing argument the defense theory that the charged offenses were committed by another man (not Contreras) whose DNA was found on the red beer can.  In addition, the evidence of Contreras's DNA on A.F. and the eyewitness testimony of A.F. and A.H. inform our decision on harmless error.  We find no prejudicial error.

II.

CONTRERAS'S ARGUMENT THE TRIAL COURT'S STRAY COMMENT
REGARDING CONTRERAS'S LIKELY INELIGIBILITY FOR POSTSENTENCE
CONDUCT CREDIT MUST BE STRICKEN IS WITHOUT MERIT.

In his opening brief, Contreras contends the trial court erred by stating at the sentencing hearing, "its understanding with counsel that [Contreras] is not entitled to any post-sentence credit."  Contreras argues, "[t]he record does not reflect the legal basis for the court's statement and there is no mention of the matter in the Abstract of Judgment. . . . The post-sentence conduct credits bar under section 2933.5 only applies to defendants with prior convictions.  There is no mention in the One Strike Law of any conduct credits bar or limitation.  [Citations.]  [¶] [Contreras] requests that the erroneous statement of law be corrected in this Court's opinion."

At the sentencing hearing, after calculating Contreras's presentence credit, which Contreras does not challenge, the trial court stated, "I'm obliged to inform you that the law provides for conduct and work time credits of up to one-third or one-half off the sentence that's imposed by the court.  Those credits are ordinarily calculated by the Department of Corrections, and in your case, if there are any credits due you, they will be

8

calculated by the Department of Corrections.  [¶] The attorneys are in agreement that for the nature of your crime, no credits are likely to be awarded to you post sentence."

The trial court's comment regarding that it was unlikely the Department of Corrections and Rehabilitation would award Contreras postsentence credit was of no legal effect, but merely a stray comment.  Contreras does not assert that the trial court issued an order denying any award of such postsentence credit or that the court should have issued an order on the subject.

Furthermore, Contreras has failed to demonstrate he was entitled to receive postsentence conduct credit against the indeterminate prison sentence that was imposed in this case.  In *In re Cervera* (2001) 24 Cal.4th 1073, 1078, the California Supreme Court analyzed whether a person sentenced to an indeterminate life term under sections 667 and 1170.12 is eligible for postsentence prison conduct credit.  In that case, the Supreme Court stated:  "Credits of any sort are available only if, and to the extent that, they are authorized.  In the absence of authorization for use against indeterminate terms, article 2.5 prison conduct credits are simply unavailable."  (*In re Cervera*, *supra*, at p. 1079.)  Contreras has failed to cite to any legal authority or provide any legal analysis showing that he might be eligible for postsentence conduct credit notwithstanding the indeterminate prison sentence.

As the trial court did not issue an order that, in any way, bound the Department of Corrections and Rehabilitation in its calculation of postsentence conduct credit, Contreras's concern regarding the court's stray comment rests on the possibility of error, as opposed to demonstrated error.  We presume, in the absence of any evidence to the contrary, that the Department of Corrections and Rehabilitation will properly perform its official duty with regard to credit.  (*People v. Talton* (1983) 145 Cal.App.3d 729, 733, fn. 3.)  We find no error.

DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.