Filed 6/7/16  P. v. Morris CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B264617 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA431734) |
| v. | |
| KEVIN MORRIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Douglas Sortino, Judge.  Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Kevin Morris was convicted of two counts of felony lewd act upon a child and two counts of misdemeanor child molesting.[1] He contends those convictions must be reversed because the trial court failed to sua sponte instruct on attempt as a lesser included offense of the charged offenses. We affirm.

**FACTS**

Viewed in accordance with the usual rules of appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357), the evidence established that during the relevant time period (October and November 2014), several schools (high schools, middle schools and charter schools) were located along the Line 14 bus route and the morning buses were usually crowded with students going to school. At the time, victims Angela L., Carla L. and Alyssa F. were regular passengers on that route. Angela and Carla were 14 years old; they usually got off at the First and Beaudry stop, which was the closest to their school. Alyssa F. was 16 years old and went to a different high school; she got off at the closest stop to her school, which was past First and Beaudry. All four convictions are based on the encounters the girls had with defendant during their morning commute.

*A.    Angela L. (Count 1)*

Angela and her 16-year-old brother, Rafael, boarded the bus together the morning of November 10, 2014. Because there were no seats available, they stood in the middle aisle; Angela held a vertical pole for balance. Defendant, whom Angela had seen on the bus before, boarded the bus about two stops later. Defendant sat down, but then stood up suddenly and moved towards where Angela was standing. Angela noticed defendant staring at her. Using his right hand, defendant grabbed the horizontal pole attached to the

---

[1]    Defendant was charged by information with two counts of lewd act upon a 14-year-old child (§ 288, subd. (c)(1); counts 1 and 2) and two counts of misdemeanor child molesting (§ 647.6, subd. (a)(1); counts 3 and 4). (All undesignated statutory references are to the Penal Code.) A jury convicted defendant on all counts. Defendant was sentenced to a total of five years, eight months in prison, comprised of three-year high term on count 1; plus a consecutive eight months on count 2 (one-third the two-year midterm), plus a consecutive one year in county jail on count 3, plus a consecutive one year in county jail on count 4. Defendant timely appealed.

ceiling; the position of his hand was close to Angela's head. Angela felt something pressing against her shorts-clad right thigh; she could feel whatever it was getting hotter. Looking down, Angela saw that the thing pressing against her thigh was a "huge bump" in the front of defendant's shorts, where his penis would be. Defendant did not rub against Angela or say anything, but Angela could hear him breathing hard. The crowded bus made it impossible for Angela to move away and she was too afraid to say anything, even to her brother. Angela was five feet tall and the manner in which defendant was holding the ceiling pole made him seem like a bigger person, which increased her fear that he might escalate his unwanted touching to physical violence. The touching lasted between three and five minutes; it continued while the bus was moving and when it stopped. During that time, Angela looked at defendant twice; he looked "grumpy." The touching ended when Alyssa F. (the victim in counts 3 and 4), invited Angela to sit next to her. Still feeling scared and shaky, Angela told Alyssa what had just happened. Alyssa reported the event to the bus driver. When Angela got off the bus at her usual stop, she saw her friend, Carla (the victim in count 2), getting off another bus. Angela cried when she told Carla what had happened. That same day, Angela spoke to school officials and a school police officer about what had happened. A video of the incident, taken by security cameras on the bus, was introduced into evidence.

One of defendant's other victims, Alyssa F. (counts 3 and 4), witnessed the incident with Angela on November 10. Alyssa had previously had several unpleasant encounters with defendant while riding the bus to school. When Alyssa saw defendant on the bus the morning of November 10, she watched him to see if he was going to move towards her. When instead she saw how close defendant was to Angela, Alyssa watched them to see if something was going to happen. Seeing Angela's worried expression, Alyssa felt compelled to say something because she wished someone had been there to help her during her prior encounters with defendant. Alyssa put her arm out to Angela and said, " 'Sweetie, do you want to stand over here?'." Angela nodded affirmatively and walked over to where Alyssa was standing. Angela was shaking and could not speak. When seats opened up, Alyssa directed Angela to the seat closest to the window

3

and Alyssa took the aisle seat so that she could protect Angela. Once seated, Angela started to cry. Angela was barely able to speak but eventually told Alyssa how defendant had touched her. At the First and Beaudry stop, Angela and Alyssa reported the incident to the bus driver.

Bus driver Juan Arroyo testified that while he was taking Angela and Alyssa's report of the incident, he saw defendant standing on the sidewalk. Defendant walked across the street after looking at Arroyo and was "shaking his head back and forth like saying no."

B. *Carla L. (Count 2)*

On November 10, after Angela tearfully told Carla what had happened, Carla realized that Angela's experience was similar to something that happened to Carla two or three weeks previously. There were no seats available when Carla got on the bus, so she stood near the front facing forward and held onto a pole to steady herself. The bus was moving when Carla noticed defendant, whom she had seen on the bus before, walking towards her. Defendant announced, to no one in particular, that he intended to get off at the next stop. But defendant did not get off at the next stop. Instead, he stood behind Carla, held the horizontal bar attached to the ceiling with both hands and pressed his entire body against Carla's back. Looking down, Carla saw defendant's pants "bulging out" where his penis would be. She felt defendant's pants-covered penis touching her butt, the back of her waist and her left thigh. The way in which defendant was holding the ceiling bar made it difficult for her to move; when she tried to move away, defendant moved towards her to close the gap. The way defendant's arms were positioned made Carla feel trapped. When the bus went over a pot hole, Carla lost her balance but defendant grabbed her and said he would not let her fall. The touching lasted about 10 minutes. It ended when defendant got off the bus at the stop for the high school. Carla got off at the same stop. She did not tell anyone what had happened until a few days later when she told Angela. Carla never told her mother because her parents were having marital issues and Carla did not want to add to her mother's problems. But when Angela told Carla about her experience, Carla decided they had to report both incidents. Having

4

a friend who experienced the same thing made it easier to do so. Carla and Angela reported the incident to the school police. Later that day, they met with the school principal and a counselor. In each case, Carla and Angela were questioned separately. Carla wrote out a statement describing the incident.

C.    *Alyssa F. (Counts 3 and 4)*

Alyssa could not remember the exact dates of the three encounters she had with defendant prior to November 10. The first occurred sometime in the middle of October. On that occasion, soon after boarding the bus Alyssa was standing about three feet behind the driver, facing towards the windows on the driver's side. Defendant grabbed the leather strap used for balance that was close to where Alyssa was standing. Defendant moved so close to Alyssa that he was pushing his whole body up against Alyssa's left side. Alyssa attributed defendant's uncomfortable closeness to the crowded bus, but got off one stop early to get away from him.

The second time Alyssa encountered defendant, she noticed him about four feet away from where she was standing near the handicap seats. Alyssa sensed someone getting close to her. She turned and saw defendant standing on her right side. Initially, defendant was holding the pole next to the pole Alyssa was holding, but he moved his hand such that he was holding the same pole Alyssa was holding. At the same time, he shifted his body so that he was facing Alyssa. Defendant rubbed his right upper thigh against Alyssa's right hip. Alyssa felt the shape of defendant's thigh and the stiffness of his penis. Alyssa recalled that defendant was "pressing it up against" her, but she could not recall whether he was moving. The crowded bus made it impossible for Alyssa to move away. The touching lasted about three minutes and ended when defendant got off the bus at First and Beaudry, which was one stop before Alyssa's stop. Alyssa told her mother what had happened and for a few days her mother drove her to school, but then Alyssa regained her confidence and started taking the bus again.

The final incident occurred one and one half weeks after the second incident. On the third occasion, Alyssa had just boarded the bus when she noticed defendant walking towards her from the back. Alyssa avoided making eye contact with defendant and

5

moved to a position near the middle exit door. Defendant moved behind Alyssa; he grabbed a horizontal pole with his right hand and a vertical pole with his left hand. The manner in which defendant was holding the two poles restricted Alyssa's ability to move; he was standing so close that Alyssa began to feel claustrophobic. Alyssa next felt defendant's "thigh and his penis, his groin" brushing against her hip in conjunction with the movement of the bus; she felt his erect penis touching the back of her thigh. The touching lasted through three bus stops, about eight minutes. Alyssa wanted to believe defendant's closeness was the result of a crowded bus, but she eventually "connected two and two." Alyssa turned around and said, "Excuse me," but did not make eye contact with defendant; defendant did not respond. But when Alyssa said it louder and pointed towards defendant's arm, defendant moved his arm which allowed Alyssa to walk to a seat in the back of the bus. Defendant also walked to the back of the bus. Defendant exited at the same First and Beaudry stop he used the last time.

Until November 10, Alyssa told only her mother about any of her encounters with defendant on the bus. But seeing what happened to Angela convinced Alyssa that defendant's conduct was intentional, not just the result of a crowded bus. For this reason, she reported to the bus driver what had happened to Angela. Alyssa was interviewed by a deputy sheriff about the incident involving Angela on November 10; to explain why she believed defendant's behavior that day was part of a pattern, Alyssa told the officer about her prior encounters with defendant, but did not elaborate. Alyssa went into greater detail about what defendant had done to her when a detective interviewed her later that week.

Defendant did not testify.

## DISCUSSION

### A.    *Instructions on Attempt to Commit a Lewd Act*

Defendant contends the judgment on counts 1 and 2 must be reversed because the trial court did not sua sponte instruct on attempt to commit a lewd act upon a 14 year old as a lesser included offense within the greater completed offense. He argues that, because the evidence showed that defendant did not touch Angela or Carla with his hands or arms and never spoke to either girl (except to tell Carla he would not let her fall), the

6

jury could conclude he moved close to the victims "with the intent of arousing, appealing to or gratifying his lust, passions or sexual desires," but the crowded bus made it impossible for him to complete the act. We find no error in not instructing on a lesser included offense.

Trial courts have a sua sponte duty to instruct on a lesser included offense if there is substantial evidence from which a reasonable jury could conclude the defendant is guilty of the lesser offense, but not the greater. Instructions on a lesser included offense are necessary "only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense. [Citation.]" (*People v. Shockley* (2013) 58 Cal.4th 400, 403-404.)

An attempt to commit a specific intent crime is a lesser included offense of the completed crime. (*People v. Ngo* (2014) 225 Cal.App.4th 126, 156.) Committing a lewd act in violation of section 288 is a specific intent crime. (*People v. Whitman* (1995) 38 Cal.App.4th 1282, 1290.) Accordingly, attempt to commit a lewd act is a lesser included offense of the completed offense. "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Thus, the trial court had a sua sponte duty to instruct on attempt to commit a lewd act if there was evidence from which a reasonable jury could conclude the defendant had the specific intent to commit a lewd act and committed a "direct but *ineffectual* act done toward its commission." (§ 21a, italics added.) There was no such evidence.

Section 288 makes it a crime to "willfully and lewdly" commit "any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child . . . with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." If the victim is under the age of 14 years, the crime is punishable by 5, 8 or 10 years in prison. (§ 288, subd. (a).) If the victim is 14 or 15 years old, and the perpetrator is at least 10 years older than the victim, the punishment is one, two, or three years in prison, or not more than one year in a county jail. (§ 288, subd. (c)(1).) Not including age, the elements of the crime are: (1) the defendant

7

willfully touched any part of the child's body on the bare skin or through the clothing; and (2) the defendant did so with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child. (CALCRIM No. 1112.)

It is well settled that, "Whether the acts actually, or in point of fact, have the effect of arousing the passions or sexual desires of the person upon whom they are committed, is immaterial. If the acts are of a lascivious nature and the intent is to arouse the passions or sexual desires of the party upon whom they are committed, then the crime is consummated." (*People v. McCurdy* (1923) 60 Cal.App. 499, 502; see CALCRIM No. 1112 ["Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required."].)

Defendant's contention fails because he does not identify evidence of any "direct but *ineffectual* act" done toward the completed crime of lewd conduct. There was no evidence that defendant tried but failed to press his groin against Angela and Carla. Although the evidence was not clear that defendant's penis was erect, the crime was completed when he pressed his groin area against the victims with the requisite intent. It is immaterial that he did not touch them with his hands and arms. To the extent defendant's argument is that he committed only an attempt because his lascivious desires were not satisfied, not only is there no evidence of that, defendant's point is contrary to well settled law. (*McCurdy, supra*, 60 Cal.App. at p. 502.)

B.      *No Sua Sponte Duty to Instruct on Attempt to Commit Misdemeanor Molestation*

Defendant contends the judgment on counts 3 and 4 must be reversed because the trial court did not sua sponte instruct on attempt to commit misdemeanor child molestation in violation of section 647.6, subdivision (a)(1) as a lesser included offense of the completed crime. He argues evidence that he stood so close to Alyssa that she could feel his erect penis on her hip and thigh for several minutes could be "interpreted as an attempt to annoy or molest" because he "never touched Alyssa with his hands; he never physically restrained her in any way; he said nothing and made no noises; he allowed Alyssa to move away when she asked to do so; and the bus was bouncing about

8

such that the contact was not continuous and, indeed, dictated by the movement of the bus." We find no error.

Section 647.6, subdivision (a)(1) makes it a misdemeanor to annoy or molest any child under 18 years of age. The elements of the crime are: (1) defendant engaged in conduct directed at a child; (2) a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by such conduct; and (3) the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child. (CALCRIM No. 1122). An attempt to commit child molestation consists of a specific intent to commit the crime, and a direct but ineffectual act done toward its commission. (§ 21a.)

Here, the parties discussed instructions on attempted misdemeanor child molestation as a lesser included offense of the completed crime: "THE COURT: . . . I just don't see that lesser as existing given the state of the record at this point unless someone wants to correct me or convince me I'm wrong. People. [¶] [THE PROSECUTOR]: I'm fine with that. [¶] [DEFENSE COUNSEL]: That's fine."

Assuming for the sake of argument that attempted child molestation is a lesser included offense within the completed crime, we agree with the trial court and counsel that there was no evidence of only an attempt. Defendant cites *People v. McSherry* (2006) 143 Cal.App.4th 598, for this proposition, which the People do not appear to dispute. But, the issue in *McSherry* was the applicable statute of limitations on a charge of attempted child molestation, not whether the attempt was a lesser included offense within the completed crime. Cases are not authority for propositions not considered. (*People v. Jones* (1995) 11 Cal.4th 118, 123, fn. 2.)

In *People v. Ngo, supra*, 225 Cal.App.4th at page 156, the appellate court held that, unlike an attempt to commit a specific intent crime, an attempt to commit a general intent crime is not a lesser included offense of the greater crime because the attempted crime necessarily includes a specific intent that is not included in the greater crime. (Id. at p. 156.)

In *Ruelas v. Superior Court* (2015) 235 Cal.App.4th 374, the court recently held child molestation is a general intent crime. (*Id.* at p. 379.) It explained: "The offense of

9

annoying or molesting a child under the age of 18 years is a general intent crime. [Citation.] Yet it includes the 'mental state element' of motivation by an unnatural or abnormal sexual interest. [Citations.] For that reason, courts have described section 647.6 as ' "a strange beast." ' [Citation.]" (*Ibid*.)

We need not address whether attempted child molestation can ever be a lesser included crime to child molestation. Even assuming an attempt could be a lesser included offense, because, as we shall explain, here, there was insufficient evidence to warrant the instruction. There was no evidence from which a reasonable jury could conclude that defendant's conduct – pressing his erect penis against Alyssa's hip and thigh – was an "ineffectual act" directed towards the commission of misdemeanor child molestation. Such conduct, committed with the requisite intent, can be nothing less than conduct that would have disturbed, irritated, offended, or injured a normal person. It is immaterial that defendant did not touch Alyssa with his hands, physically restrain her, speak to her or make noises. That he allowed Alyssa to move when she asked is also immaterial since false imprisonment is not an element of the crime. On this record, we find no error in the trial court's failure to instruct on attempted child molestation as a lesser included offense of the completed crime.

## DISPOSITION

The judgment is affirmed.

RUBIN, ACTING P. J.

WE CONCUR:

FLIER, J.

GRIMES, J.

10